[Cite as *Easley v. Dept. of Rehab. & Corr.*, 2011-Ohio-2623.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ANDRE EASLEY

    Plaintiff

    v.

DEPARTMENT OF REHABILITATION AND CORRECTION

    Defendant
    Case No. 2010-01221

Judge Joseph T. Clark
Magistrate Matthew C. Rambo

<u>MAGISTRATE DECISION</u>

**{¶ 1}** Plaintiff brought this action alleging negligence. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability. Plaintiff's July 22, 2010 motion for a court view of the area where plaintiff was injured is DENIED.

**{¶ 2}** At all times relevant, plaintiff was an inmate in the custody and control of defendant at the Ross Correctional Institution (RCI) pursuant to R.C. 5120.16. On December 17, 2009, plaintiff was working as a cook in the RCI kitchen when he suffered burns to both hands from near-boiling water. According to plaintiff, he was attempting to clear a clog in the drain of a kettle when the water rushed out unexpectedly. Plaintiff testified that there was a hole in the rubber gloves he was wearing and that the hot water penetrated the gloves. Although he had previously performed the procedure numerous times without incident, plaintiff felt that the technique was dangerous and that defendant should not have permitted him to do it. According to plaintiff, defendant failed to properly train and supervise him.

{¶ 3}  In order to prevail upon his claim of negligence, plaintiff must prove by a preponderance of the evidence that defendant owed him a duty, that defendant's acts or omissions resulted in a breach of that duty, and that the breach proximately caused his injuries.  *Armstrong v. Best Buy Co., Inc.,* 99 Ohio St.3d 79, 81, 2003-Ohio-2573, citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77.  Defendant owed plaintiff the common law duty of reasonable care.  *Justice v. Rose* (1957), 102 Ohio App. 482, 485.  Reasonable care is that which would be utilized by an ordinarily prudent person under similar circumstances.  *Murphy v. Dept. of Rehab. &* Corr., Franklin App. No. 02AP-132, 2002-Ohio-5170, ¶13.  A duty arises when a risk is reasonably foreseeable.  *Menifee*, supra.  Such a duty includes the responsibility to exercise reasonable care to protect inmates against those unreasonable risks of physical harm associated with institutional work assignments.  *Boyle v. Dept. of Rehab. & Corr.* (1990), 70 Ohio App.3d 590, 592.

{¶ 4}  While the court is cognizant of a "special relationship" between an inmate and his custodian, no higher standard of care is derived from the relationship.  *Clemets v. Heston* (1985), 20 Ohio App.3d 132.  The state is not an insurer of the safety of its prisoners; however, once it becomes aware of a dangerous condition in the prison, it is required to take the degree of reasonable care necessary to protect the prisoner from harm.  Id.

{¶ 5}  Inmate Anthony Brown was cooking chicken in a large kettle when plaintiff was burned.  Brown testified that he had worked in the RCI kitchen for a "few months" at the time of the incident and that he had received most of his training "on the job" from other inmates.  Brown stated that the drain used to empty the kettle became clogged with pieces of chicken.  According to Brown, the procedure for clearing such a clog was to partially unscrew the drain valve handle and use an approximately 18-inch "baby bottle" brush to clear the clog.  Brown testified that on the day of the incident, he asked plaintiff to help him clear the clog.  According to Brown, as plaintiff successfully cleared

the clog, hot water spewed out of the valve and onto plaintiff's hands. Brown testified that plaintiff was not wearing gloves when he began the procedure and that he put on black rubber gloves only after the water began to pour out.

{¶ 6} Inmate James Leach testified that he had been working in the RCI kitchen as a cook for about six months prior to the time when plaintiff was burned but that he did not see the incident occur. Leach estimated that the large kettles were approximately 55 gallons in size and that he had been instructed to put on rubber gloves, unscrew the valve handle, and use a large "baby bottle" brush to clear a clog. Leach stated that he learned the procedure from another inmate and that he had performed it approximately ten times. According to Leach, it was not uncommon for hot water to splash on his hands during the procedure.

{¶ 7} Kevan Hatfield testified by way of deposition that he had been an inmate cook in the RCI kitchen for five years prior to the time that plaintiff was burned, that he was familiar with plaintiff from working in the kitchen with him, and that he witnessed the incident.[1] According to Hatfield, plaintiff was attempting to clear a clog in the drain valve of the kettle when water flowed out and burned him. Hatfield observed that plaintiff was wearing cloth "hot gloves" that are normally used for carrying hot pans about the kitchen. Hatfield testified that he was familiar with the process for clearing a clog in the kettle drain, and that another inmate had instructed him in the process when he began working in the kitchen. Hatfield's description of the process was similar to that of Brown, and Leach, but he also stated that plaintiff failed to put on the black rubber gloves to protect his hands. According to Hatfield, when inmates in the kitchen needed the gloves, they could simply retrieve a pair from the "dish room."

{¶ 8} Stanley Potter is employed by defendant as a Food Service Coordinator. Potter testified that he was on duty at the time of the incident, but was in another area of

---

[1] Plaintiff objected to the admission of Hatfield's deposition. Defendant filed the deposition the day prior to trial pursuant to Civ.R. 32 and argued that Hatfield was unavailable pursuant to Civ.R. 32(A)(3)(c) inasmuch as he was imprisoned at the time of trial. Plaintiff's objection is OVERRULED and Hatfield's

the kitchen when it happened.  According to Potter, Brown was new to the kitchen and should not have been cooking the chicken by himself.  Potter was unaware of how or why Brown was assigned to cook the chicken, but he admitted that the head inmate cook has authority to assign tasks to other inmates.  Potter testified that inmates are instructed to have him check to see that the chicken has reached a safe temperature and is fully cooked before draining the kettle.  Potter stated that on the day of the incident, he was not asked to check the temperature of the chicken in the kettle in question and thus plaintiff and Brown should not have been draining the kettle at that time.

**{¶ 9}**   With regard to clogs in the kettle drains, Potter testified that the procedure outlined by the various inmates was the normal procedure, and that it is inevitable that water will get on an inmate's hands when unclogging the drain; that wearing the black rubber gloves was essential to avoid burns.  Potter further testified that the method was being used when he started working in the kitchen five years prior, and was the most effective method that he knew of for clearing clogs.

**{¶ 10}** Although he did not witness the incident, Potter stated that he arrived in the area immediately thereafter.  As plaintiff raised his hands in the air he witnessed water pour out of the rubber gloves plaintiff was wearing.  Potter also noticed that plaintiff was wearing cloth gloves under the rubber gloves.  Potter testified that he was familiar with plaintiff from his service in the kitchen and found him to be likeable and competent, but, in his opinion, plaintiff should have known better than to attempt to clear the clog while wearing cloth gloves.  Regarding supervision of the inmates working in the kitchen, Potter testified that during meal preparation there are seven food service coordinators who supervise 40 to 50 inmates, six to eight of whom are cooks.

**{¶ 11}** Wayne Ford is employed by defendant as an RCI Food Service Manager 1.  Ford testified that he was on duty on the day of the incident, but that he did not

_____

deposition is admitted as Defendant's Exhibit H.

witness the incident and that his duties do not include direct supervision of the inmates working in the kitchen. Ford stated that the drains of the kettles clog on a regular basis and that the procedure outlined by the other witnesses is the accepted practice. While it is common for water to pour out of the drain when it is being unclogged, Ford was unaware of anyone being burned as a result during his three years at RCI.

{¶ 12} Based upon the foregoing, the court finds that plaintiff failed to establish that defendant committed a breach of its duty of care. The court further finds that plaintiff's own lack of care was the sole proximate cause of his injuries. Plaintiff's admission that he was familiar with the accepted practice for unclogging the kettle drain and that he had successfully performed the task in the past, combined with Potter's testimony that plaintiff was a competent worker, convinces the court that plaintiff knew or should have known that wearing the black rubber gloves was required for his safety. Instead, plaintiff inexplicably attempted to clear the clog while wearing cloth hot gloves which became soaked with hot water. Plaintiff then compounded the problem by putting rubber gloves over the cloth ones, which caused the hot water to remain in contact with his hands for an extended period of time. Based upon the foregoing, the court further finds that the procedure used to unclog the drains is not unreasonably hazardous, and that inmates working in the kitchen, including plaintiff, were made aware of the risks involved and properly trained in the procedure. Accordingly, judgment is recommended in favor of defendant.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the*

*decision, as required by Civ.R. 53(D)(3)(b).*

_____
MATTHEW C. RAMBO
Magistrate

cc:

Douglas R. Folkert                          Richard F. Swope
Emily M. Simmons                          6480 East Main Street, Suite 102
Assistant Attorneys General            Reynoldsburg, Ohio 43068
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

MR/cmd
Filed May 16, 2011
To S.C. reporter May 26, 2011