[Cite as *Lance v. Boldman*, 2018-Ohio-44.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

ROGER LANCE, et al.

     Appellants

     v.

PEGGY BOLDMAN, et al.

     Appellees

C.A. No.     16AP0032

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     V-68303-10

DECISION AND JOURNAL ENTRY

Dated: January 8, 2018

CALLAHAN, Judge.

{¶1}    Appellants, Roger Lance, Todd Lance, David Lance, Joel Lance, Gregory Lance, Charles Lance, Gary Lance, and Melodie Kinzel ("the Complainants")[1] appeal the judgment of the Wayne County Common Pleas Court, Probate Division which found Appellee, Peggy Boldman, not guilty of concealing and/or embezzling the assets of the estate of Raymond Lance ("the Estate").  For the reasons set forth below, this Court affirms in part and reverses in part.

I.

{¶2}    Raymond Lance ("Uncle Bill") never married and did not have any children.  He, however, had siblings, nieces, nephews, and great nieces.  Ms. Boldman was one of Uncle Bill's nieces.

---

[1] The notice of appeal indicated it was filed by the "Complainants" but failed to individually identify which of the eight "Complainants" were bringing the appeal.  Based on the wording of the notice of appeal, it is deemed that all eight of the "Complainants" have filed the instant appeal.

{¶3}    Uncle Bill resided by himself on the family farm.  Following a fall at home, Uncle Bill was placed in a nursing home where he remained until his death.  Prior to his admission to the nursing home, Uncle Bill appointed Roger Lance as his attorney-in-fact.  Despite this appointment, Ms. Boldman was handling Uncle Bill's financial affairs.

{¶4}    Shortly after Uncle Bill's admission to the nursing home, some of his family members filed an application for a guardianship, which Ms. Boldman contested on Uncle Bill's behalf.  Following a family meeting, it was agreed that Ms. Boldman would handle Uncle Bill's affairs, he would remain in the nursing home, and the guardianship application was withdrawn.

{¶5}    Six months after his admission to the nursing home, Uncle Bill revoked the earlier power of attorney appointing Roger Lance as his attorney-in-fact, and executed a general durable power of attorney appointing Ms. Boldman and Mr. Johnson[2] as his attorneys-in-fact. He also executed a new will the same day.

{¶6}    As his attorney-in-fact, Ms. Boldman assisted Uncle Bill with his finances.  She facilitated the payment of the nursing home invoices through long term care insurance, income from social security and workers' compensation, Uncle Bill's own funds, and Medicaid.  Prior to Uncle Bill passing away, Ms. Boldman closed his checking account and used the funds to pay his bills.  The Complainants asserted that Ms. Boldman kept the monies from the insurance proceeds, refunds from the nursing home, and the funds from the closed checking account for her own use.

---

[2] The Complainants agree that Mr. Johnson did not take any action under the general durable power of attorney.

{¶7}   Additionally, Ms. Boldman facilitated Uncle Bill's directives to gift a guitar and mandolin to his great nieces, Ms. Boldman's daughters, J.W. and J.C.  Upon Uncle Bill's placement in the nursing home, Ms. Boldman removed the guitar and mandolin from his home to ensure they were not damaged or thrown out while the house was being cleaned.  According to Ms. Boldman and her daughters, during the preceding 20 years Uncle Bill had expressed to them on various occasions his desire to give the guitar to J.W. and the mandolin to J.C., he was aware that the guitar and mandolin were given to the great nieces, and he did not object.

{¶8}   The eight Complainants filed a complaint against Ms. Boldman for concealing and/or embezzling the assets of the Estate, challenged Uncle Bill's competency to execute the general durable power of attorney, and claimed Mr. Johnson failed to file an inventory.  A hearing was held on the complaint. Ms. Boldman, her daughters, J.W. and J.C., and Melodie Kinzel, one of the Complainants, testified at the hearing.

{¶9}   The probate court dismissed the claim against Mr. Johnson because an inventory was filed subsequent to the complaint.  Additionally, the probate court dismissed the claims of Joel Lance, Gregory Lance, Charles Lance, and Gary Lance for failure to prosecute, and they do not challenge that portion of the judgment.  Accordingly, this Court declines to address the assignments of error as they relate to these Appellants and the probate court's dismissal of these Appellants' claims for failure to prosecute is affirmed.

{¶10}   As to the claims of Roger Lance, Todd Lance, David Lance, and Melodie Kinzel ("the Heirs"), the probate court found Uncle Bill competent to execute the power of attorney and Ms. Boldman not guilty of concealing/embezzling the Estate's assets. The Heirs have timely appealed this judgment by asserting two assignments of error.  To facilitate the analysis, this Court will address the assignments of error out of order.

II.

**ASSIGNMENT OF ERROR NO. 2**

THE PROBATE COURT ERRED TO THE PREJUDICE OF THE ESTATE []
BY ADMITTING IN EVIDENCE THE HEARSAY STATEMENTS OF
[UNCLE BILL], THE DECEDENT.

{¶11} In the second assignment of error, the Heirs argue that the probate court erred when it admitted certain testimony of Ms. Boldman and her two daughters, J.W. and J.C., regarding Uncle Bill's statements as to his intention to gift the guitar to J.W. and the mandolin to J.C. Specifically, they argue that the statements were hearsay and not subject to admission under Evid.R. 804(B)(5). For the reasons that follow, this Court agrees.

{¶12} The decision to admit or exclude evidence lies in the sound discretion of the trial court. *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶ 79. *Accord Drew v. Marino*, 9th Dist. Summit No. 21458, 2004-Ohio-1071, ¶ 8-9, 16 (abuse of discretion standard applied to court's exclusion of decedent's statements under Evid.R. 804(B)(5)). "A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by evidence, or grossly unsound." (Internal citations and quotations omitted.) *Tustin v. Tustin*, 9th Dist. Summit No. 27164, 2015-Ohio-3454, ¶ 21.

{¶13} The first witness was Ms. Boldman and she was initially examined by the Heirs. As to the guitar and mandolin, the Heirs limited their examination of Ms. Boldman to her and her daughters' possession of the musical instruments, their lack of payment for the instruments, and the value of the instruments. The Heirs did not make any inquiry as to why Ms. Boldman and her daughters possessed the instruments or Uncle Bill's intentions as to the instruments.

{¶14} After the Heirs' examination of Ms. Boldman she was questioned by her attorney. With regard to the guitar and mandolin, Ms. Boldman's attorney specifically asked her why she

gave the guitar and mandolin to her daughters, if Uncle Bill was aware of the gifting of the instruments, what Uncle Bill's intentions and wishes as to the disposition of the guitar and mandolin were, and if his intentions ever changed. Ms. Boldman testified that "Uncle Bill had always said, [J.W.] was the only one in the family that" he wanted to give the guitar to and it was his intention to give J.C. the mandolin. According to Ms. Boldman's testimony, Uncle Bill made his intentions regarding these instruments known on different occasions during the 20 years before his death and his intentions never changed. Ms. Boldman testified that Uncle Bill was aware that the instruments had been given to his great nieces and he did not object.

{¶15} Ms. Boldman's counsel asked similar questions to both of her daughters during their examinations. Both of the daughters' testimony mirrored Ms. Boldman's testimony as to Uncle Bill's donative intent relative to the instruments.

{¶16} The Heirs repeatedly asserted hearsay objections to this line of questioning directed to Ms. Boldman and her daughters. The probate court sustained the first objection, but overruled the remaining objections. At the conclusion of Ms. Boldman's examination by all of the parties, the probate court clarified its position regarding her testimony concerning Uncle Bill's statements: "there were a series of objections to statements made by the deceased regarding his intentions and as [the court] said, [it would] admit those and assign [the] appropriate weight and [the court] believe[s] that falls within [Evid.R.] 804(B)(5)."

{¶17} In its decision, the probate court held that Ms. Boldman's testimony regarding Uncle Bill's statements was admissible because the testimony was derived while she was on cross-examination to rebut the assertion that she concealed assets. The probate court's ruling, however, is not supported by the law or the record.

{¶18} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "[S]tatements made by a decedent would fall under the general prohibition against hearsay." *Mancz v. McHenry*, 2d Dist. Montgomery No. 24728, 2012-Ohio-3285, ¶ 27.

{¶19} Hearsay statements are inadmissible except as otherwise provided in the Ohio Rules of Evidence or other relevant constitutional or statutory provision. Evid.R. 802. One such hearsay exception is found in Evid.R. 804(B)(5), the "[s]tatement by a deceased or incompetent person" provision, which excepts from the hearsay rule admissions of the statements of one who is now deceased. Evid.R. 804(B)(5) states as follows:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
> * * *
> (5) Statement by a deceased or incompetent person. The statement was made by a decedent * * *, where all of the following apply:
> (a) the estate or personal representative of the decedent's estate * * * is a party;
> (b) the statement was made before the death * * *;
> (c) the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent * * *.

{¶20} The purpose of Evid.R. 804(B)(5) is to benefit a decedent's representative by allowing the decedent to "'speak from the grave'" and rebut testimony by an adverse party. *Murray v. Carano*, 5th Dist. Ashland No. 17-COA-005, 2017-Ohio-8235, ¶ 23, quoting *Bobko v. Sagen*, 61 Ohio App.3d 397, 409 (8th Dist.1989), quoting *Bilikam v. Bilikam*, 2 Ohio App.3d 300, 305 (10th Dist.1982). This hearsay exception, however, "is not intended to apply to the party opposing the decedent[, but] [r]ather, it applies to the party substituted for the decedent." *Bilikam* at 305. "The above case law indicates that in proceedings brought pursuant to R.C. 2109.50, testimony of the decedent is considered hearsay and does not fall within the hearsay exceptions set forth in Evid.R. 804(B)(5)." *Mancz* at ¶ 28.

{¶21} Ms. Boldman was before the probate court pursuant to a R.C. 2109.50 proceeding as the respondent who was accused of concealing the Estate's assets. Thus, Ms. Boldman was an adverse party opposing the Estate and not a party representing the Estate. Contrary to Ms. Boldman's argument, she was not Uncle Bill's representative because 1) she had resigned as the executor of the Estate and 2) her authority under the power of attorney ended upon Uncle Bill's death. *See Lessee of Wallace v. Saunders*, 7 Ohio 173, 178 (1835); *Bacon v. Donnet*, 9th Dist. Summit No. 21201, 2003-Ohio-1301, ¶ 28. Because Ms. Boldman was an adverse party and not the Estate's representative, the Evid.R. 804(B)(5) hearsay exception is not applicable to her testimony regarding Uncle Bill's statements. *See Bilikam* at 305.

{¶22} Moreover, Ms. Boldman, as an adverse party, offered Uncle Bill's statements to establish his donative intent and thereby to defend against the concealment claim. Ms. Boldman's purpose is inapposite to the hearsay exception, which only permits the Estate to offer Uncle Bill's statements to rebut the testimony of the adverse party to protect the Estate's assets. Because of the nature of a R.C. 2109.50 proceeding, Evid.R. 804(B)(5) does not apply. *See Mancz* at ¶ 28. Accordingly, Ms. Boldman's testimony about Uncle Bill's statements regarding his donative intent as to the guitar and mandolin constituted inadmissible hearsay.

{¶23} Additionally, the probate court classified Ms. Boldman's testimony as being on cross-examination and inferred she did not have any control over the line of questioning and was compelled to answer the questions posed to her. The record and the law do not support such a conclusion.

{¶24} In *In re Estate of Fife*, 164 Ohio St. 449 (1956), the Ohio Supreme Court addressed the scope and form of a concealment proceeding. R.C. 2109.50 provides for a special statutory proceeding to discover concealed assets of an estate. *Id.* at 453. A concealment

proceeding is classified as an inquisitional discovery proceeding. *Id*. at 453-454. Because it is a discovery proceeding, the action does not proceed in the same fashion as an ordinary civil action between two or more parties wherein there is a complaint and an answer. *Id*. at 454. Rather, a concealment action notifies the probate court of alleged misconduct, upon which the court must investigate the charge and make a finding of guilt or innocence based on the evidence presented. *Id.* at 453-454; *see* R.C. 2109.50.

{¶25} The court conducts the required investigation by examining, under oath, the respondent and any witnesses. R.C. 2109.50. The statute provides the court with the power to compel the respondent by citation or other judicial order to appear before the tribunal to be examined as to the matters alleged in the complaint. *Id.* Because it is the court that calls the respondent to appear before it, it is the court that controls the examination of the respondent. *Fife* at 454. However, the court may delegate the examination of the respondent to the attorneys. *Id.* The respondent "is therefore in reality the witness of the court, and the character and extent of [the respondent's] examination rest largely in the court's discretion." (Internal citations omitted.) *Id*. Further, because a concealment action is "a special remedy wherein the court cites the suspected person to appear before it and is in control of [the] examination, * * * [R.C.] 2317.07, [which] authoriz[es] as a matter of right the examination of an adverse party as if under cross-examination, is not applicable." (Emphasis deleted.) *Id*.

{¶26} In this case, the probate court deferred the examination of Ms. Boldman to counsel. Ms. Boldman was examined first by the Heirs and then by her counsel. The line of questioning eliciting Uncle Bill's statements was posed by Ms. Boldman's attorney, and not the Heirs' attorney. Despite the leading nature of the questions by Ms. Boldman's attorney, she was not in fact on cross-examination. *See Fife* at 455 (subject to the court's discretion, cross-

examination of the respondent is conducted by either the complainant or the court). Because Ms. Boldman was being questioned by her own attorney and she was not an adverse party, she and her attorney were in control of the testimony being elicited. This line of questioning by Ms. Boldman's counsel induced the hearsay testimony by Ms. Boldman as to Uncle Bill's statements.

{¶27} The Heirs objected each time Ms. Boldman's attorney asked about Uncle Bill's statements and intent. The Heirs did not induce Ms. Boldman to provide this inadmissible hearsay evidence and, therefore the Heirs' hearsay objections should have been sustained. *Contra Murray*, 2017-Ohio-8235, at ¶ 25-26, 29 (The appellate court affirmed the overruling of the hearsay objection because the executor induced the respondent to provide the decedent's hearsay statement when the executor asked the respondent "[w]hy" she transferred the money to her savings account.); *Gorby v. Aberth*, 9th Dist. Summit No. 28021, 2017-Ohio-274, ¶ 7-11 (Relying on the invited error doctrine, this Court affirmed the probate court's use of hearsay evidence because the beneficiaries induced the trustee and a financial advisor to provide the decedent's hearsay statements regarding the decedent's concerns about his trust and who he wanted as the trust's financial advisor.).

{¶28} Additionally, because the Heirs did not induce the hearsay evidence, the probate court lacked discretion to allow Ms. Boldman's attorney to present her daughters' hearsay testimony regarding Uncle Bill's donative intent as to the instruments in an attempt to bolster Ms. Boldman's earlier hearsay testimony. *See contra Murray* at ¶ 31 (Under the theory of curative admissibility, the probate court had discretion to permit the respondent to offer inadmissible hearsay evidence to rebut or explain the hearsay previously induced by the executor.).

**{¶29}** Based on the foregoing, the probate court abused its discretion when it classified Ms. Boldman's testimony as being on cross-examination and admitted the inadmissible hearsay evidence. The Heirs' second assignment of error is sustained.

### ASSIGNMENT OF ERROR NO. 1

THE JUDGMENT OF THE PROBATE COURT HOLDING [MS.] BOLDMAN NOT GUILTY OF CONCEALING AND/OR EMBEZZLING ASSETS OF THE ESTATE [] IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶30}** In the first assignment of error, the Heirs argue the probate court's judgment that Ms. Boldman was not guilty of concealing or embezzling the Estate's assets is against the manifest weight of the evidence. Specifically, the Heirs challenge the probate court's not guilty finding as to the following Estate assets: the guitar, the mandolin, monies from a closed checking account, various nursing home insurance checks and refunds, and a car insurance payment.

**{¶31}** R.C. 2109.50 allows any person "interested in the estate" to file in the county probate court with jurisdiction over the estate a complaint seeking the return of any "moneys, personal property, or choses in action," believed to belong to the estate that the claimant suspects to have been "concealed, embezzled, or conveyed away or of being or having been in the possession of" the individual named in the complaint. The respondent is compelled to appear before the probate court "to be examined, on oath, touching the matter of the complaint." R.C. 2109.50. The probate court, either by jury or bench, must make a finding of guilty or not guilty and, if guilty, assess damages or order the return of the property and impose sanctions, including a ten percent penalty. R.C. 2109.52. Thus, these proceedings are quasi-criminal. *Fife*, 164 Ohio St. at 453; *see Ukrainiec v. Batz,* 24 Ohio App.3d 200, 202 (9th Dist.1982).

**{¶32}** This Court has held that

[t]he purpose of R.C. 2109.50 is to provide a speedy and effective method of discovering assets belonging to the estate and securing their recovery. The statute is not intended as a substitute for a civil action to collect a debt, obtain an accounting, adjudicate rights under a contract or recover judgment for money owing an executor or administrator.

(Internal citation omitted.) *Wozniak v. Wozniak,* 90 Ohio App.3d 400, 407 (9th Dist.1993); *see Fife* at 453 ("Its purpose is to facilitate the administration of estates by expeditiously bringing into such estates those assets which rightfully belong there."). Nor does the statute "involve the litigation of a criminal act." *Wozniak* at 411.

**{¶33}** While R.C. 2109.50 is a quasi-criminal special statutory proceeding, this type of action is controlled by the laws governing civil proceedings in the probate court. *Wozniak* at 411. Thus, the complainant must prove the elements of a R.C. 2109.50 claim by a preponderance of the evidence. *Kasick v. Kobelak*, 184 Ohio App.3d 433, 2009-Ohio-5239, ¶ 13 (8th Dist.); *see Murray*, 2017-Ohio-8235, at ¶ 36.

**{¶34}** Because of the quasi-criminal nature, "[w]rongful or culpable conduct on the part of the person accused is an element of the offense, which must be proven by a preponderance of the evidence." *Kaforey v. Burge*, 9th Dist. Summit No. 17050, 1995 Ohio App. LEXIS 2030, *6 (May 10, 1995), citing *Ukrainiec* at 202. Thus, the complainant must prove more than "mere possession" of the estate assets. *See Longworth v. Childers*, 180 Ohio App.3d 162, 2008-Ohio-4927, ¶ 21 (2d Dist.); *Ukrainiec*, 24 Ohio App.3d at 202. "[T]he inquiry under R.C. 2109.50 focuses on the ownership of the asset and whether possession of the asset is being impermissibly concealed or withheld from the estate." *Wozniak* at 407.

**Transactions/gifts by an attorney-in-fact**

{¶35} "A power of attorney is a written instrument authorizing an agent, known as an 'attorney[-]in[-]fact,' to perform specific acts on the principal's behalf." *Rasnick v. Lenos*, 12th Dist. Butler No. CA2004-02-033, 2005-Ohio-2916, ¶ 20, citing *Testa v. Roberts*, 44 Ohio App.3d 161, 164 (6th Dist.1988). The power of attorney creates a fiduciary relationship between the attorney-in-fact and the principal. *Bacon*, 2003-Ohio-1301, ¶ 29, quoting *In re Scott*, 111 Ohio App.3d 273, 276 (6th Dist.1996). In a fiduciary relationship a "'special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting superiority or influence, acquired by virtue of this special trust.'" *Stone v. Davis*, 66 Ohio St.2d 74, 78 (1981), quoting *In re Termination of Emp. of Pratt*, 40 Ohio St.2d 107, 115 (1974). Thus, "[t]he law is zealous in guarding against abuse of such a relationship." *Bacon* at ¶ 30, citing *Pratt* at 115.

{¶36} A gift inter vivos is an immediate, voluntary, and gratuitous transfer of property by a competent donor to another. *Flanders v. Blandy*, 45 Ohio St. 108, 113 (1887). Generally, property passed by inter vivos gift is not property of the estate and thus not subject to R.C. 2109.50. *Goldberg v. Maloney*, 111 Ohio St.3d 211, 2006-Ohio-5485, ¶ 34. However, the Ohio Supreme Court has recognized that "concealment actions under R.C. 2109.50 and 2109.52 could be applicable to recover certain assets wrongfully concealed, embezzled, or conveyed away *before* the creation of the estate." (Emphasis sic.) *Id.* at 33. Thus, the "probate court has jurisdiction over an action brought pursuant to R.C. 2109.50 to recover funds passed to a third party by inter vivos transaction when the validity of the underlying transfer is challenged." *State v. Harmon*, 5th Dist. Tuscarawas No. 2016AP080042, 2017-Ohio-320, ¶ 20.

**Analysis of R.C. 2109.50 claim**

**{¶37}** The analysis of a R.C. 2109.50 claim begins with whether the complainant has established a prima facie case of concealment by a preponderance of the evidence. *See In re Estate of Black*, 145 Ohio St. 405, 412 (1945); *Murray*, 2017-Ohio-8235, at ¶ 36; *Kasick*, 184 Ohio App.3d 433, 2009-Ohio-5239, at ¶ 13. If so, then, the respondent may rebut and overcome the prima facie case of concealment by presenting clear and convincing evidence of "a present intention on the part of the donor to make a gift" to the suspected person. *Brooks v. Bell*, 1st Dist. Hamilton No. C-970548, 1998 Ohio App. LEXIS 1476, *13 (Apr. 10, 1998), citing *Fife,* 164 Ohio St. at 455-456. *See Kaforey*, 1995 Ohio App. LEXIS 2030, at *6. In order to establish the transfer of the asset as an inter vivos gift, the donee must prove: "'(1) an intention on the part of the donor to transfer the title and right of possession of the subject property; and (2) the delivery of the property to the donee along with the relinquishment of ownership, dominion and control over it.'" *Kaforey* at *7, quoting *Maggio v. Maggio*, 9th Dist. Medina No. 2283-M, 1994 Ohio App. LEXIS 2724, *4 (June 22, 1994).

**{¶38}** With regard to the validity of gratuitous property transfers made in a fiduciary relationship involving a power of attorney, "a general, durable power of attorney does not authorize attorneys-in-fact to transfer the principal's property to themselves or to others, unless the power of attorney explicitly confers this power." *MacEwen v. Jordan*, 1st Dist. Hamilton No. C-020431, 2003-Ohio-1547, ¶ 12. This rule applies to both transfers made to the attorney-in-fact and gifts to third parties. *See Estate of Short v. Ward (In re Blackburn)*, 4th Dist. Scioto No. 05CA3014, 2006-Ohio-406, ¶ 19. In the absence of such an express provision, the transfer of property from a principal to an attorney-in-fact is regarded with suspicion that undue influence may have been exerted upon the principal by the attorney-in-fact and is thereby presumptively

invalid. *See Brooks* at \*12-13. *See also Bacon*, 2003-Ohio-1301, at ¶ 30, citing *Studniewski v. Kryzanowski*, 65 Ohio App.3d 628, 632 (6th Dist.1989). The attorney-in-fact bears the burden of proof that the transfer was fair and there was no undue influence upon the principal. *Testa*, 44 Ohio App.3d at 166; *Bacon* at ¶ 30, citing *In re Scott*, 111 Ohio App.3d at 276.

{¶39} While the donee bears the burden of proving the validity of the transfer, "the party attacking the gift retains the ultimate burden of proving undue influence by clear and convincing evidence" on rebuttal. *Brooks* at \*13-14. The elements of undue influence are: (1) a susceptible party, (2) another's opportunity to influence the susceptible party, (3) the actual or attempted imposition of improper influence, and (4) a result showing the effect of the improper influence. *West v. Henry*, 173 Ohio St. 498, 501 (1962).

{¶40} This Court has defined prima facie and clear and convincing evidence as follows:

> Prima facie evidence \* \* \* denotes evidence which will support, but not require, a verdict in favor of the party offering the evidence. Clear and convincing evidence is defined as that measure or degree of proof which \* \* \* will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

(Internal citations and quotations omitted.) *Kaforey*, 1995 Ohio App. LEXIS 2030, at \*7. Clear and convincing does not mean "clear and *unequivocal*." (Emphasis sic.) *Fife*, 164 Ohio St. at 456.

{¶41} When reviewing the manifest weight of the evidence in a civil case, this Court

> weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

(Citations and quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001). "In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual

findings. [T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." (Internal quotations and citations omitted.) *T.S. v. R.S.*, 9th Dist. Summit No. 27955, 2017-Ohio-281, ¶ 4.

**Guitar and Mandolin**

**{¶42}** The Heirs argue that the power of attorney did not contain an express provision granting Ms. Boldman the authority to make gifts to herself or others. This Court agrees. Because Ms. Boldman was Uncle Bill's attorney-in-fact, the gifting of the guitar and mandolin were presumed invalid and she must prove by clear and convincing evidence that Uncle Bill intended to gift the guitar to J.W. and the mandolin to J.C. and that the transfer of the instruments was fair. *See Brooks*, 1998 Ohio App. LEXIS 1476, at *13; *Bacon*, 2003-Ohio-1301, at ¶ 30.

**{¶43}** The power of attorney granted Ms. Boldman the authority "[t]o take possession of and exercise control over any and all moneys, goods, chattels and effects and all other property [] belonging to [Uncle Bill] wheresoever found." Ms. Boldman testified and her answers to the requests for admission confirm that she removed the guitar and mandolin from Uncle Bill's home when it was being cleared out by the other family members and gave the instruments to her daughters. Thus, Ms. Boldman initially "[took] possession of and exercise[d] control over" the guitar and mandolin pursuant to the authority granted to her by the power of attorney.

**{¶44}** As to the subsequent gifting of the guitar and mandolin to J.W. and J.C., the Heirs contend that "[Ms.] Boldman presented no evidence that [Uncle Bill] made a gift." The Heirs assert the self-serving statements of Ms. Boldman and her two daughters with respect to Uncle Bill's statements are inadmissible hearsay. Based on the analysis above, this Court agrees.

**{¶45}** The probate court held that "even if * * * the statements made to Ms. Boldman [and her daughters] by the decedent constitute inadmissible hearsay, the evidence does support

the position that Ms. Boldman gave [her daughters] the instruments with the intention of carrying out the wishes of the decedent." The probate court, however, did not identify any of the evidence that it relied upon to support its conclusion. While this Court agrees with the probate court that Uncle Bill retained the power to gift these instruments, a review of the hearing transcript and the admitted exhibits do not reflect any evidence beyond the inadmissible hearsay evidence offered by Ms. Boldman and her daughters as to Uncle Bill's donative intent. Accordingly, Ms. Boldman has failed to demonstrate by clear and convincing evidence that Uncle Bill intended to gift the guitar to J.W. and the mandolin to J.C. and that the transfer of the instruments was fair.

**Checking Account**

**{¶46}** The Heirs argue that Ms. Boldman closed Uncle Bill's checking account and kept the balance of $665.88. Because Ms. Boldman does not have any written records to support the disbursement of the $665.88, the Heirs allege without further support, that Ms. Boldman concealed and/or embezzled the funds for her own use.

**{¶47}** Ms. Boldman testified that she did not keep the funds for her own personal use, and instead used the funds from the closed checking account to pay Uncle's Bill's outstanding debts, such as the nursing home and credit cards. Additionally, Uncle Bill received funds for his own spending needs. While Ms. Boldman did not produce receipts or records of these debt payments and the money provided directly to Uncle Bill, she was able to testify as to what debts were paid. The Heirs, however, were unable to prove by a preponderance of the evidence that Ms. Boldman kept the money from Uncle Bill's closed checking account for herself.

**Insurance Checks and Nursing Home Refunds**

**{¶48}** The Heirs allege that while Uncle Bill was a resident at the nursing home, Ms. Boldman received a total of $22,826.85 in checks from AF&L Insurance Co. made payable to Uncle Bill, but she only applied $9,572.00 of those insurance funds to the payment of the nursing home costs. Thus, the Heirs assert Ms. Boldman has kept the remaining $13,254.85 in insurance proceeds for her own use. Because Ms. Boldman does not have any written records to support the disbursement of the $13,254.85, the Heirs allege without further support, that Ms. Boldman concealed and/or embezzled the funds for her own use.

**{¶49}** The Heirs contend that Ms. Boldman deposited the insurance checks, including one in the amount of $13,718.85, directly into her checking account, but only paid $9,572.00 to the nursing home. As to this insurance check, the Heirs argue that the "balance [of] $4,146.85 was not accounted for" from an insurance check issued by AF&L Insurance Co. While the Heirs have made two separate arguments on appeal regarding the insurance proceeds, the record reflects the $4,146.85 alleged to have been embezzled/concealed is included in the total amount of $13,254.85.

**{¶50}** The Heirs also complain that Ms. Boldman did not deposit the insurance checks into Uncle Bill's checking account. Ms. Boldman testified that Uncle Bill's checking account had been closed because his income from social security and workers' compensation was being sent directly to the nursing home and there was no need for a checking account.

**{¶51}** Further, Ms. Boldman testified that upon closing Uncle Bill's checking account she deposited Uncle Bill's funds into her own bank account and wrote checks to pay Uncle Bill's debts. Ms. Boldman testified that she used the insurance proceeds to pay Uncle Bill's nursing home costs. Ms. Boldman asserted that whenever she received an invoice from the nursing

home she would pay it immediately to ensure Uncle Bill's continued occupancy at the nursing home.

{¶52} The Heirs concede the nursing home invoices were paid in full and in fact, were overpaid resulting in refunds. The Heirs allege Ms. Boldman, in her capacity as the attorney-in-fact and first executor of the Estate, "[was] the only person that could have received the refunds totaling $2,315.49" from the nursing home and that she has concealed these refunds.

{¶53} Ms. Boldman also testified that the insurance monies were used to pay Uncle Bill's extensive credit card debt. Ms. Kinzel confirmed that Ms. Boldman paid over $10,000 of Uncle Bill's credit card debt. Ms. Boldman affirmed that she did not keep any of the insurance money for herself.

{¶54} The Heirs attempted to show that Ms. Boldman converted Uncle Bill's funds to pay off his car and then gave the car to her daughter, J.C. However, Ms. Boldman testified that she used her own credit card to loan her daughter the funds to pay off Uncle Bill's car. Additionally, when asked if she used Uncle Bill's money to pay for an addition to her home, Ms. Boldman testified that the addition to her home was completed 20 years earlier and the garage was completed five years before she was appointed as the power of attorney.

{¶55} Accordingly, the Heirs were unable to prove by a preponderance of the evidence that Ms. Boldman kept the money from the insurance proceeds and nursing home refunds for herself.

### 1999 Buick Car Insurance Payment

{¶56} In addition to the arguments above, the Heirs argue, for the first time on appeal, that Ms. Boldman should have been found guilty because she paid $72.58 for car insurance on the 1999 Buick while it was being used by her daughter, J.C. While evidence was presented at

the hearing as to this issue, the Heirs did not include any arguments or request relief on this basis in their written closing argument and memorandum of law. Despite Ms. Boldman bringing this to the Heirs' attention, they did not seek leave to add any argument regarding Uncle Bill's car in their reply to Ms. Boldman's written closing argument.

{¶57} "Generally, an issue need not be considered on appeal when it was apparent at the time of trial but not raised." *Bauer v. Georgeff*, 10th Dist. Franklin No. 97APE03-313, 1998 Ohio App. LEXIS 4144, *25 (Sept. 1, 1998) (Plaintiff was found to have waived punitive damages on her malpractice claim because she did not request punitive damages on that claim at trial despite the presentation of such evidence.). Because this instance of alleged concealment and/or embezzlement was apparent during the hearing but not raised in the Heirs' written closing argument, this argument is waived and this Court will not consider this issue for the first time on appeal. *See id*; *JPMorgan Chase Bank, N.A. v. Burden*, 9th Dist. Summit No. 27104, 2014-Ohio-2746, ¶ 12 ("Arguments that were not raised in the trial court cannot be raised for the first time on appeal."). *See also Gregory v. Martin*, 7th Dist. Jefferson No. 15 JE 17, 2016-Ohio-650, ¶ 22 (trial court did not err in failing to award a specific damage when such damage had not been requested).

**Conclusion**

{¶58} Upon review of the record and deferring to the probate court as to issues of witness credibility and the weight to be given to the evidence, this Court cannot say that the probate court's finding that Ms. Boldman was not guilty of concealing and/or embezzling assets of the Estate was against the manifest weight of the evidence as it pertains to the checking account funds, insurance proceeds, and nursing home refunds. The Heirs' first assignment of error is overruled as to those Estate assets.

{¶59} However, with respect to the guitar and the mandolin, the probate court's finding that Ms. Boldman was not guilty of concealing and/or embezzling assets of the Estate was against the manifest weight of the evidence. The Heirs' first assignment of error is sustained as to those Estate assets.

### III.

{¶60} The first assignment of error is sustained in part and overruled in part, and the second assignment of error is sustained. The judgment of the Wayne County Common Pleas Court, Probate Division is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to between Appellants and Appellee Peggy Boldman.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

CHARLES A. KENNEDY, Attorney at Law, for Appellants.

CRAIG R. REYNOLDS, Attorney at Law, for Appellee.

DANIEL J. HOSTETLER, Attorney at Law, for Appellee.