[Cite as *Bennett v. Bennett*, 2023-Ohio-4856.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In the Matter of:

Paul A. Bennett, et al.

        Appellant

v.

Paula Bennett

        Appellee

Court of Appeals No. L-22-1279

Trial Court No. 20210ADV02881

**<u>DECISION AND JUDGMENT</u>**

Decided: December 29, 2023

* * * * *

Brandon M. Rehkopf, Kevin C. Urtz, and Anthony Calamunci, Jr.,
for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This case is before the court on appeal by appellants, Paul A. Bennett, Lerone L. Bennett, and Douglas E. Bennett[1] from the October 27, 2022 judgment of the Lucas County Court of Common Pleas, Probate Division. For the reasons that follow, we affirm.

---

[1]  We note that the record on appeal is somewhat confusing as to whether this appeal is on behalf of Paul Bennett only, or on behalf of all three plaintiffs from the trial court. The notice of appeal only refers to Paul, and the brief is entitled "Brief of Appellant," however, other times in the record, including throughout the brief and in a motion for extension of time, reference is made to appellants plural. As this issue has not been raised, we have erred on the side of considering all three original plaintiffs as appellants here.

# I. Assignments of Error

<u>No. 1</u>:  The Trial Court's decision finding that Appellee, Paula Bennett, was not guilty of concealing and withholding estate assets was against the manifest weight of the evidence

<u>No. 2</u>:  The Trial Court erred as a matter of law by not requiring that Appellee prove the use and purpose of the contested monetary transfers by clear and convincing evidence.

<u>No. 3</u>:  The Trial Court erred as a matter of law by finding the Appellee did not owe rent for her exclusive use of estate assets.

# II. Background

{¶ 2} Appellants and appellee are siblings, and the children of decedent, Leonard Bennett (hereinafter "decedent") who died intestate on May 3, 2016.

### A. *Hearing to Appoint an Administrator of Decedent's Estate*

{¶ 3} Both Paul and appellee applied to be the administrator of the estate.  A hearing was held before a magistrate on November 30, 2016, to determine who should be the administrator.  Ultimately, the court did not appoint either administrator; Attorney Margaret Weisenburger was appointed administrator of decedent's estate.

2.

*B. Concealment of Assets Action*

**{¶ 4}** On December 30, 2021, appellants filed a complaint for concealment of assets against appellee pursuant to R.C. 2109.50.  In their complaint, appellants alleged that appellee "concealed loan proceeds, funds wrongfully withdrawn from the Decedent's bank accounts after his death, and rents due to the estate."[2]

**{¶ 5}** On June 14, 2022, a hearing was held before a magistrate.  Paul, Douglas, and appellee all testified, and numerous exhibits were introduced, including decedent's bank statements and the transcript of the November 2016 hearing.

1. Paul's Testimony

**{¶ 6}** Relevant to the instant appeal, Paul testified regarding checks written to appellee from decedent's KeyBank checking account.  He believed the checks were written by appellee, not decedent, stating that "my father don't write out checks.  He never did.  My momma took care of writing the checks, that's why her name was on the checks too so she wrote out the checks.  My father never wrote out checks to nobody.  My father would rather go to the bank and get cash and pay it on his own." As far as Paul knew, no member of his family assisted decedent with his financial matters, although he "stayed out of [his] father's affairs like that."

**{¶ 7}** Paul was asked to read appellee's testimony given in 2016 regarding the process for paying decedent's bills.  At the time, appellee had explained that her dad's

---

[2]  They additionally stated that appellee also concealed and retained possession of a Chevy Astro van and a Ford Econoline bus, as well as assets that were in decedent's residence at the time of his death.  However, they do not raise these items on appeal.

3.

money would come on the first of the month, then she would "collect all the bills, and then go to the bank, get the money, pay the bills." She elaborated that "[m]ostly [she] would call on the phone and check [her] phone, or if it was something that needed to be paid, like the cable bill, [she] would sometimes go and get the money. Or sometimes [she] would just use [her] own money and tell [decedent] to give [her] the money back."

{¶ 8} Paul also testified that they never asked appellee to pay rent while she was living in decedent's home, although they did tell her not to move into the house.

2. Appellee's Testimony

{¶ 9} Appellee moved into decedent's home at "[t]he end of October, beginning of November" of 2016 and was still residing there at the time of the hearing. She conceded that she did not pay rent during the period that the house was owned by the estate[3] and she did not in any way compensate her brothers for her exclusive use of the home. She further testified that the administrator had *never* asked her to pay rent. Appellee did pay all of the expenses relating to the house, including taxes, utilities, and insurance.

{¶ 10} With regard to checks written from her father's account, appellee agreed that her testimony in 2016, as read by appellant, was "pretty much" accurate. She was questioned on cross-examination regarding many checks written on her father's account, both checks to third parties that she wrote or authorized electronically, and checks written to herself. She explained that her father was bedridden, so she was helping him with his finances. For the period from January 1, 2015 through the date of decedent's death,

---

[3] The house was transferred into the names of appellee and appellants in December of 2018.

4.

there were "roughly $30,000 in checks for payments written directly to" appellee. For the most part, she did not remember the specific use that the funds were put to and had no records regarding what the checks were used for,[4] although she related that she would sometimes pay for things with her money and then her dad would reimburse her. She explained that the checks were either signed by her father, or she would sign them in her father's presence and that the checks written to her "were either reimbursement or for payment of [her] dad's expenses." She agreed that "when [she] and her dad would sit down to write out these checks, * * * [she] presented him bills or invoices to show him what the money was being used for" but she no longer has those records.

{¶ 11} Appellee was questioned about $10,000 her dad took from his MetLife account. In 2016, she previously testified that her father was going to give her the $10,000 toward the purchase of a house, but the "house didn't go through, so [she] just put the money back into his account." There was, however, no evidence that it had been repaid. At the hearing in 2022, she at one point seemed to agree that she had paid decedent back, but then later indicated that her father had never given her the money and thus, she had never repaid it. She stated that although the money was supposed to be a gift to help with the purchase of a house, she never bought the house and her father never gave her the $10,000. The KeyBank records show that $10,000 was placed in the

---

[4] She did provide an itemized list of prescriptions from St. Vincent Medical Center that she testified she paid for and was reimbursed by her father. The total cost of these prescriptions was $3,514.95.

5.

KeyBank account from MetLife on August 28, 2015, and the records do not show any single payment to appellee, or any single withdrawal, of $10,000.

{¶ 12} Appellants' attorney asked appellee whether decedent's money was used to buy a bus she owned, citing to appellee's testimony in 2016, when she was questioned about a withdrawal from her father's bank account, and she stated that "I bought - - we bought - - I bought my dad a bus." She stated that she did not use her father's funds to purchase the bus.

{¶ 13} Appellee also wrote three checks to herself after her father's death totaling $14,000. She stated that these checks were used to pay for the funeral, food for the funeral, flowers, and a rental for after the funeral. She admitted that she did not have court authority to write those checks.

{¶ 14} When asked by the magistrate whether her father was ever declared incompetent by a court, she responded "No. Smart as a whip." She further agreed that her father was able to understand and take care of his assets and understood what was coming in and going out. The magistrate also noticed "that there was never a check to the water company, * * * only one check to a cable company. There's no checks for gas to the house, [and] there's no checks for electric." Appellee explained that she "would pay it cash but like in some of the gas like the bills I would pay on the telephone. So some of it was on the telephone so I would go and pay cash and then tell daddy and he would give me the money back."[5]

---

[5] The decedent's bank records do reflect some payments over the phone to First Energy (electric bill), ATT (phone) and Columbia Gas.

6.

3. Decision

{¶ 15} The magistrate issued his decision June 17, 2022, ruling in favor of appellee. Appellants filed objections and supplemental objections to this decision, and on October 27, 2022, the probate judge conducted an independent examination and then adopted the magistrate's decision.

{¶ 16} Appellants appealed that decision to this court. The court notes appellee did not file a brief in opposition.

### III. Analysis

*A. Standard of Review*

{¶ 17} "The standard of review on appeal from a decision of a trial court adopting a magistrate's decision is whether the trial court abused its discretion." *Faqi v. Pattin*, 6th Dist. Lucas Nos. L-19-1038, L-19-1107, 2020-Ohio-5115, ¶ 25, citing *O'Brien v. O'Brien*, 167 Ohio App.3d 584, 2006-Ohio-1729, 856 N.E.2d 274, ¶ 11 (8th Dist.). Similarly, we "review for an abuse of discretion the probate court's judgment denying [an] appellant's objections to the magistrate's decision." *In re Estate of Ohman*, 6th Dist. Sandusky No. S-22-015, 2023-Ohio-4008, ¶ 31, citing *Marlowe v. Marlowe*, 6th Dist. Wood No. WD-22-063, 2023-Ohio-1417, ¶ 133. "Abuse of discretion means that the [probate] court's decision was unreasonable, arbitrary, or unconscionable. In determining whether the probate court abused its discretion, we presume its factual findings were correct and will not reverse a particular factual determination unless it is against the manifest weight of the evidence; that is, unless a particular factual

7.

determination is not supported by some competent, credible evidence in the record."

(Citations omitted.)  *Id.*

{¶ 18} However, where the issue appealed involves a question of law, we employ a de novo standard of review.  *In re Estate of Porter*, 2017-Ohio-8840, 100 N.E.3d 1080, ¶ 9 (10th Dist.), citing *Severing v. Severing*, 2015-Ohio-5236, 54 N.E.3d 724, ¶ 9 (10th Dist.).

### B.  Applicable Law

{¶ 19} "R.C. 2109.50 permits the filing of a complaint in the probate court of the county having jurisdiction of the administration of a trust estate 'against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys, chattels, or choses in action of such estate,' to aid in the discovery and recovery of assets.  The statute authorizes any "person interested in the estate" to initiate the special proceeding, and the "probate court shall promptly proceed to hear and determine the matter" after first "by citation or other judicial order compel the person or persons suspected to appear before it to be examined, on oath, touching the matter of the complaint."  (Citations omitted.)  *In re Estate of Ohman* at ¶ 28.  The court, by jury or by bench, determines "whether the person accused is guilty of having concealed, embezzled, conveyed away, or been in the possession of moneys, personal property, or choses in action of the estate."  R.C. 2109.52.  The proceedings are considered quasi-criminal.  *Lance v. Boldman*, 2018-Ohio-44, 93 N.E.3d 1013, ¶ 31 (9th Dist.), citing *In re Estate of Fife*, 164 Ohio St. 449, 453, 132 N.E.2d 185 (1956).

8.

**{¶ 20}** "The Ohio Supreme Court has determined that an interested person states an actionable cause under R.C. 2109.50 with a two-prong test: 'if he alleges that the asset is the exclusive property of the estate and that the defendant has unauthorized possession of the asset or in some way has impermissibly disposed of it.'" *Estate of Ohman* at ¶ 40, quoting *Goldberg v. Maloney*, 111 Ohio St.3d 211, 2006-Ohio-5485, 855 N.E.2d 856, ¶ 35. The focus under R.C. 2109.50 is "on the ownership of the asset and whether possession of the asset is being impermissibly concealed or withheld from the estate." *Id.*, quoting *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 407, 629 N.E.2d 500 (9th Dist.1993). A complainant must prove the elements of a R.C. 2109.50 claim by a preponderance of the evidence. *Boldman* at ¶ 33, citing *Kasick v. Kobelak*, 184 Ohio App.3d 433, 2009-Ohio-5239, 921 N.E.2d 297, ¶ 13 (8th Dist.). Because of the quasi-criminal nature of a R.C. 2109.50 proceeding, "'[w]rongful or culpable conduct on the part of the person accused is an element of the offense, which must be proven by a preponderance of the evidence.'" *Id.* at ¶ 34, quoting *Kaforey v. Burge*, 9th Dist. Summit No. 17050, 1995 WL 283774, at *2 (May 10, 1995).

### C. First Assignment of Error

**{¶ 21}** The trial court concluded that appellant had failed to prove by a preponderance of the evidence that any of the "complained of assets" were estate assets, and that there was "no evidence whatsoever that there were any assets concealed by [appellee]." Appellants contend that the trial court's decision that appellee was not guilty

9.

of concealing and withholding estate assets was against the manifest weight of the evidence.

{¶ 22} In *State v. Tellis,* 2020-Ohio-6982, 165 N.E.3d 825, ¶ 62-63 (6th Dist.), we set forth:

> When we review a claim that a verdict is against the manifest weight of the evidence, we weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction."

> Although we consider the credibility of witnesses under a manifest-weight standard, we must, nonetheless, extend special deference to the trial court's credibility determinations, given that it is the trial court that has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor.  "Moreover, it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable [trier of fact] could not find the testimony of the witness to be credible." (Citations omitted.)

10.

1. Appellants' Claims

{¶ 23} Appellants claim that appellee wrote herself checks both before and after decedent's death without legal authority. We will consider these items separately.

2. Checks Written Before Decedent's Death

{¶ 24} With regard to the checks written from decedent's account during his lifetime, the trial court observed that the record contained inconsistent statements from appellee as to whether decedent loaned money to her, that appellee had testified that the checks "were for reimbursement of personal expenses paid by [appellee] on [d]ecedent's behalf, and were written at [d]ecedent's request," and that appellee admitted to signing decedent's name to the checks with decedent's "blessing and knowledge." The trial court found no evidence that the monies were intended to be loans, and it presumed decedent was cognizant of the state of his financial affairs, noting that decedent "was never found to be incompetent and there [was] no evidence that he was under any disability affecting his ability to understand the nature of his finances." The court also "thoroughly reviewed the [d]ecedent's bank statements and [found] no evidence of irregularity."

{¶ 25} We find the trial court's conclusions are not against the manifest weight of the evidence. Although appellee did not provide the court with many records or receipts as to the expenses paid, she did testify that the checks were to reimburse her for expenses she paid on behalf of decedent, and that the checks were either written by decedent, or by her in decedent's presence after she presented him bills or invoices to show him what the money was being used for. As appellee testified that her father was "smart as a whip"

11.

and appellants did not provide any contrary testimony, it was reasonable for the trial court to conclude that these transfers were made with decedent's knowledge and consent and as reimbursement for expenses appellee paid on behalf of decedent. *See In re Scott*, 111 Ohio App.3d 273, 276, 675 N.E.2d 1350 (6th Dist.1996).

{¶ 26} Appellants point to inconsistent statements made by appellee. These include statements as to whether appellee used $1,000 of the money toward her bus, and whether decedent gave/loaned her money for a house that claimed she later repaid. While the record does contain inconsistent statements on these issues, we will defer to the trial court's factual determinations. We do note that the trial court's conclusion that no loan was made for $10,000 is supported by decedent's bank statements, which show a $10,000 deposit from MetLife, and no subsequent withdrawal in the amount of $10,000.

3. Checks Written After Decedent's Death

{¶ 27} As to the checks written after decedent died, the trial court acknowledged that this was improper, however, there was "ample evidence that those funds were used to pay [d]ecedent's final expenses." This is also supported by the record. Although she did not provide receipts for the entire amount, appellee provided the court with receipts for food and for funeral services.

{¶ 28} Therefore, we find the trial court's finding that appellee was not guilty of concealing and withholding assets was not against the manifest weight of the evidence. Appellants' first assignment of error is not well-taken.

12.

*D. Second Assignment of Error*

**{¶ 29}** In their second assignment of error, appellants maintain that the trial court should have made appellee prove the use and purpose of the contested monetary transfers. They take issue with the fact that appellee wrote checks to herself without a power of attorney, and that, had she had a power of attorney, self-dealing is presumptively invalid and the burden would be on appellee to rebut a presumption of undue influence. They also argue that, as appellee was acting on her father's behalf, she had the equivalent authority to an attorney-in-fact and should be held to this higher standard. Lastly, they contend that, even under the "standard concealment of assets framework," it was established that appellee wrote checks from her father's account without legal authority.

**{¶ 30}** The analysis of a R.C. 2109.50 claim begins with whether the complainant has established a prima facie case of concealment by a preponderance of the evidence. *Boldman* at ¶ 37. If it has been established, "the respondent may rebut and overcome the prima facie case of concealment by presenting clear and convincing evidence of 'a present intention on the part of the donor to make a gift' to the suspected person." *Id.* In the context of gratuitous property transfers made in a fiduciary relationship involving a power of attorney, unless there is an express provision authorizing the transfer of property to themselves or others, the transfer is regarded with suspicion that undue influence may have been exerted and therefore the transfer is presumptively invalid. *Id.* at ¶ 38. There is no dispute that appellee did not have a power of attorney. However,

13.

appellants argue this same presumption applies in this case, citing to cases holding one in a confidential or fiduciary relationship to a higher standard, wherein a transfer is looked upon with suspicion of undue influence. Appellants cite to, inter alia, *Studniewski v. Krzyzanowski*, 65 Ohio App.3d 628, 632, 584 N.E.2d 1297 (6th Dist.1989), where we found that "[w]here a confidential or fiduciary relationship exists between a donor and donee, the transfer is looked upon with some suspicion that undue influence may have been brought to bear on the donor by the donee. In such circumstances a presumption arises, and the party with the superior position must go forward with proof on the issue of undue influence and fairness of the transaction while the party attacking a completed gift on that basis retains the ultimate burden of proving undue influence by clear and convincing evidence." (Citations omitted.) Appellants also contend that appellee's argument is "premised on the claim that she acted on her father's behalf with his permission, in other words that she had the equivalent authority to an attorney-in-fact," citing to *Testa v. Roberts*, 44 Ohio App.3d 161, 165, 542 N.E.2d 654 (6th Dist.1988), where this court stated that "If, as appellants argue, the two nephews were acting as agents for their [aunt], the relationship must be characterized as fiduciary in nature."

{¶ 31} We do not find that the trial court abused its discretion in not requiring appellee to overcome a presumption of undue influence or an improper transfer. The trial court's findings support a conclusion that appellee and decedent were not in a confidential or fiduciary relationship. Although appellee testified she helped her father with the payment of his bills, which in some circumstances might result in a confidential

14.

or fiduciary relationship, there is evidence showing that decedent was mentally competent and actively engaged in his finances, including the specific transactions at issue here. Further, the trial court found there was no evidence that the checks were loans to appellee. Moreover, even if appellee was considered to be in a confidential or fiduciary relationship with the decedent, it would not be an abuse of discretion to find this same evidence sufficient to rebut any presumption.

{¶ 32} As for whether it was appellee's burden to explain these transactions under a "standard concealment of assets framework," as discussed above, the burden is on appellants to prove the elements of a R.C. 2109.50 claim by a preponderance of the evidence and the trial court held that they did not meet this burden. We do not find that the trial court abused its discretion in so finding.

{¶ 33} Therefore, we find appellants' second assignment of error not well-taken.

*E. Third Assignment of Error*

{¶ 34} Appellants claim that the trial court erred as a matter of law in finding that appellee did not owe rent for her exclusive use of the house from late October/early November of 2016 until the house was transferred out of the estate. Appellants cite to the following cases in support: *Thomas v. Albert C. Thomas, Inc.*, 6th Dist. Lucas No. L-11-1064, 2012-Ohio-3992; *In re Estate of Visnich*, 11th Dist. Trumbull No. 2005-T-0128, 2006-Ohio-5499; and *Collins v. Jackson*, 34 Ohio App.3d 101, 517 N.E.2d 269 (8th Dist.). Appellants also cite to Paul's testimony that appellants "told her she couldn't move in there," and Lerone's testimony that he told her "this ain't your house to be

15.

running, this is our house.  You don't have the right to be doing what you're doing," as well as to testimony that appellee excluded them from the property.

{¶ 35} With regard to this issue, the magistrate found that "[n]either the Fiduciary nor [appellants] ever made a demand for rent, nor did they seek to have her evicted from the property."

{¶ 36} We do not find an abuse of discretion.  Although, as cited by appellants, there is case law supporting the payment of fair market rent by a co-owner in possession to co-owners not in possession, courts have considered the factual circumstances when determining whether to award rent.  *See e.g. Chuma v. Patterson,* 2023-Ohio-1128, 213 N.E.3d 747, ¶ 29-33 (4th Dist.).  *Also see* R.C. 5307.21 (One tenant in common, or coparcener, *may recover* from another tenant in common, or coparcener his share of rents and profits received by such tenant in common or coparcener from the estate, *according to the justice and equity of the case.*).[6]  Here, neither the administrator nor appellants requested rent from appellee during the period between decedent's death and the date the property was transferred out of the estate and appellee testified she has paid all of the expenses relating to the property.  Moreover, it was appellants' burden to establish the reasonable rental value of the property.  *Chuma* at ¶ 24, quoting *Burchfield v. Whaley*, 4th Dist. Hocking No. 00CA02, 2001 WL 243473 (Jan. 10, 2001).  Appellants did not provide any evidence of rental value and thus there was no basis upon which the trial

---

[6]  R.C. 5307.21 is in a section of the Revised Code pertaining to partition actions, and *Chuma* relies upon R.C. 5307.21.  Appellants do not rely upon this code section, and we do not need to decide if R.C. 5307.21 applies in contexts such as this. We merely cite to it as support for the proposition that an award of rent is not mandatory.

16.

court could award rent. *See In re Estate of Ballentine*, 6th Dist. Huron No. H-98-038,

1999 WL 316843, *4 (May 21, 1999).

{¶ 37} We therefore find appellants' third assignment of error not well-taken.

## IV. Conclusion

{¶ 38} The judgment of the Lucas County Court of Common Pleas, Probate

Division, is affirmed. Pursuant to App.R. 24, appellants are hereby ordered to pay the

costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                              _____
                                                                     JUDGE
Gene A. Zmuda, J.

                                                          _____
Myron C. Duhart, P.J.                                             JUDGE
CONCUR.

                                                          _____
                                                                     JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.