[Cite as *Cuyahoga Hts. Local School Dist. v. Palazzo*, 2016-Ohio-5137.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 103592**

---

# CUYAHOGA HEIGHTS LOCAL SCHOOL DISTRICT

PLAINTIFF-APPELLANT

vs.

# JOSEPH PALAZZO, ET AL.

DEFENDANTS-APPELLEES

---

## JUDGMENT:
REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CV-13-799017 and CV-13-804215

**BEFORE:** Stewart, P.J., Laster Mays, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** July 28, 2016

**ATTORNEYS FOR APPELLANT**

Andrew A. Kabat
Daniel M. Connell
Haber Polk Kabat, L.L.P.
737 Bolivar Road, Suite 4400
Cleveland, OH 44115


**ATTORNEYS FOR APPELLEE**

Edward O. Patton
Miles Welo
Mansour Gavin, L.P.A.
Northpoint Towers, Suite 1400
1001 Lakeside Avenue
Cleveland, OH 44114

MELODY J. STEWART, P.J.:

{¶1} Joseph Palazzo, the information technology director of plaintiff-appellant Cuyahoga Heights Local School District (the "district"), funneled more than $4 million in district money into a shell corporation operated by his brother, in turn receiving nearly $660,000. The Ohio Auditor of State conducted an audit of Palazzo's transactions and concluded that defendant-appellee Michelle Protiva participated in Palazzo's scheme, receiving payments from the shell corporation in the amount of $73,600 and cell phone equipment worth $1,389. The district brought claims against Protiva, who had not been charged with criminal wrongdoing, seeking a civil recovery for a criminal act, fraud, unjust enrichment, and conversion. The court dismissed the claim for civil recovery for a criminal act committed by Protiva because the district did not prove that she had a criminal conviction as a predicate for recovery. A jury awarded the district $1,389 in damages for conversion of school district property, but rendered verdicts in Protiva's favor on the district's claims for fraud and unjust enrichment.

{¶2} In this appeal, the district argues that the court erred by dismissing its claim for civil recovery for a criminal act because Protiva had not been convicted of any criminal offense. The district also complains that the court erred by refusing to allow it to offer Palazzo's deposition testimony in lieu of his live testimony (Palazzo is currently in federal prison) because Palazzo invoked his Fifth Amendment right against self-incrimination and the court feared that the jury would draw a negative inference from

the invocation of that right. Next, the district complains that the court erroneously permitted Protiva to testify to hearsay statements by Palazzo. Finally, the district complains that the court erroneously charged the jury on the meaning of "proximate cause."

{¶3} We conclude that the court erred by dismissing the district's claim for civil recovery for a criminal act. As conceded by Protiva, the statute authorizing a civil recovery for a criminal act expressly does not require a conviction as a predicate for recovery. We also conclude that the court erred by refusing to allow the district to read into evidence Palazzo's deposition in which he repeatedly invoked his right against self-incrimination. The remaining assignments of error are moot.

{¶4} The auditor conducted a special audit of the district's finances for two purposes: (1) to identify district payments made to vendors related to Palazzo and (2) to determine whether corresponding goods and services were received by the district in exchange for those payments. The auditor's findings relating to Palazzo were offered into evidence by the district and Protiva did not dispute those findings at trial; she did dispute the auditor's findings concerning her involvement in Palazzo's scheme.

{¶5} The auditor found that the district, through Palazzo, issued 156 checks totaling $1,629,474 and incurred nine credit card transactions totaling $31,517 to a corporation named Laptops and More, Inc. Records obtained from the Ohio Secretary of State showed that Dominick Palazzo, Palazzo's brother, was the corporation's registering agent and incorporator. The documented purposes for the payments authorized by

Palazzo included technology support, laptop computers, servers, and other technology-related items. Palazzo indicated receipt of these goods and services, but none of those items were actually received by the district. The auditor found that after the district's payments were deposited into an account held by Laptops and More, Inc., the company issued $660,795 in payments to Joseph Palazzo. The auditor found that there was no apparent business activity for Laptops and More, Inc. other than with the district.

{¶6} With respect to Protiva's involvement in Palazzo's scheme, the auditor found that although she held a "volunteer" position with the district, she received payments from Laptops and More, Inc. in the amount of $73,600. In addition, the auditor found that during the period in which Palazzo engaged in his fraud, the district issued payments to "legitimate" vendors for goods or services unrelated to district operations. Those goods and services, consisting of equipment, cell phones, accessories, and related service plans, totaled $76,214, for which Protiva benefitted in the amount of $1,389. Palazzo was tried and convicted of criminal offenses for his actions, but as of the time of trial in this case, Protiva was not charged with any criminal offense relating to her employment by Laptops and More, Inc.

{¶7} Protiva was the sole witness at trial. She testified that her best friend dated Palazzo and that she grew close to him because of her friend's relationship. Protiva testified that in October 2008, Palazzo offered her employment through Laptops and More, Inc. as his personal assistant, although she did not start receiving a salary until January 2009. She testified that her work as a personal assistant consisted entirely of

running personal errands for Palazzo, such as getting coffee and lunch, picking up prescriptions, and having his car washed. Protiva also testified that Palazzo gave her gifts and furniture worth thousands of dollars. Although ostensibly an employee of Laptops and More, Inc., Protiva did not actually work out of any office provided by the company. Protiva testified that Palazzo provided her with a cell phone and that she was available to him by telephone when needed.

{¶8} In January 2009, Protiva began working out of the district's offices as an internet technology "volunteer" in addition to working as Palazzo's personal assistant for Laptops and More, Inc. She testified that she worked with two other women in the district's office who likewise claimed to be volunteers for the district, but who were paid by Palazzo through Laptops and More, Inc. Protiva spent "maybe three to nine hours a week" at the district's office. Although she "was doing a few tasks at the school," she spent 80 percent of her time engaged in running personal errands for Palazzo.

{¶9} For the first year of her volunteer work, Protiva testified that no one ever asked her who she was working for or what she was doing at the district. In January 2010, Palazzo asked Protiva and the other "volunteers" to sign a form that would give them permission to be on district property. Protiva continued in that capacity until January 2011, when she was abruptly fired by Palazzo.

{¶10} Protiva testified that Palazzo was lavish with his money and always had the "best of the best." Wondering how he could afford to do so while working for the

district, Protiva asked him directly — Palazzo told her that he saved money by living with his parents and that he received a family inheritance that he invested.

**{¶11}** The district brought a claim against Protiva under R.C. 2307.60, seeking civil recovery for a criminal act. It alleged that Protiva stole or misappropriated district funds without the district's implied or express consent, knowingly and with the purpose to deprive the district of its property. The district further alleged that this conduct constituted a theft offense under R.C. 2913.02 and that Protiva stole or misappropriated funds for her personal benefit in at least the amount identified in the auditor's report. At the close of the district's case-in-chief, the court dismissed that claim on grounds that the district did not prove that Protiva had been found guilty of any criminal act. The district's first assignment of error challenges that ruling.

**{¶12}** The district based its right of recovery on R.C. 2307.60 and 2307.61. R.C. 2307.60(A)(1) generally authorizes a civil action for damages by anyone injured by a criminal act:

> (1) Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

**{¶13}** When a civil recovery is sought from a person who has committed a theft offense, R.C. 2307.61(G)(1) states that the trier of fact may determine that "a theft offense involving the owner's property has been committed, *whether or not any person*

*has pleaded guilty to or has been convicted of any criminal offense * * *.*"  (Emphasis added.)

**{¶14}** At the close of the district's evidence, the court ruled there could be no civil recovery for a criminal act unless there was a predicate conviction.  The court acknowledged that precedent from this appellate district and others held contrary to its position; nevertheless, it relied on a federal district court case as authority for its ruling. It concluded by saying that "I'll let some higher Court [sic] sort it out."

**{¶15}** The court erred by disregarding precedent.  R.C. 2307.61(G)(1) plainly states that a party's civil recovery of damages resulting from a theft offense can be determined by the trier of fact "whether or not any person has pleaded guilty to or has been convicted of any criminal offense[.]"   Not only have we held as much, *see Gonzalez v. Spofford*, 8th Dist. Cuyahoga No. 85231, 2005-Ohio-3415, ¶ 27 ("a criminal conviction of the crime is not a condition precedent to civil liability"),[1] so have other appellate districts.  *See, e.g.*, *Citimortgage, Inc. v. Rudzik*, 7th Dist. Mahoning No. 13 MA 20, 2014-Ohio-1472, ¶ 27 ("relying on the clear language of R.C. 2307.61(G)(1), we hold that a criminal conviction is not required."); *H&W Door Co. v. Stemple*, 11th Dist. Portage No. 93-P-0031, 1994 Ohio App. LEXIS 1408, 5 ("It is clear that R.C. 2307.61 is a civil remedy and that it is available even though the defendant has not pled guilty to, or been convicted of, any criminal offense in relation to any act involving the owner's

---

[1] *Gonzalez* relied on R.C. 2307.60 for this proposition, but this appears to be a clerical error — the proposition is found in R.C. 2307.61.

property."); *Shaw v. Bretz*, 3d Dist. Marion No. 9-13-31, 2014-Ohio-3672, ¶ 42 ("no criminal conviction is required to recover civil damages under R.C. 2307.61.").

{¶16} When dismissing the district's claim for civil recovery, the court relied on *Ortiz v. Kazimer*, N.D.Ohio No. 1:11 CV 01521, 2015 U.S. Dist. LEXIS 38496 (Mar. 26, 2015), a decision from the United States District Court for the Northern District of Ohio in which the district court held that a claim of civil liability for criminal conduct failed as a matter of law because "[r]ecovery depends on the existence of a criminal conviction." As relevant to this appeal, *Ortiz* involved a claim for civil recovery under R.C. 2307.60 for a battery committed by police officers who allegedly used excessive force when making an arrest. Unlike this case, *Ortiz* did not involve a theft or willful damage to property, so R.C. 2307.61 did not apply to that case. The court erred by relying on *Ortiz.*

{¶17} Acknowledging the clear language of R.C. 2307.61(G)(1), Protiva concedes that the court erred by concluding that the district had to prove that she had been convicted of theft as a predicate to recovery. Appellee's brief at 9. She maintains, however, that the court's error in misapplying R.C. 2307.61 does not require reversal because an independent basis existed for disposing of the civil recovery for a criminal act claim — that the court could have directed a verdict under Civ.R. 50(A)(4) on grounds that the district failed to offer evidence that Protiva committed any type of theft offense.

{¶18} "[A] reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 222, 631 N.E.2d 150 (1994).

This precedent might apply in this appeal had the court erroneously directed a verdict on one basis, but we could find a separate, non-erroneous basis for directing a verdict existed.

{¶19} The court did not direct a verdict on the civil recovery for a criminal act claim, nor could the record support the assertion that it did. The court dismissed the count and made its reason for dismissal clear: "There must be a criminal conviction before civil liability arises under this section." Whether the court would have been correct in directing a verdict on the civil recovery for a criminal act claim would have required the court to find that reasonable minds could come to but one conclusion on the evidence, and that conclusion was adverse to the district. *See* Civ.R. 50(A)(4); *Parrish v. Jones*, 138 Ohio St.3d 23, 2013-Ohio-5224, 3 N.E.3d 155, ¶ 16. As posited by Protiva, that determination would have required the court to state unequivocally that there was no evidence that she committed a theft offense against the district. The court cited no evidence of any kind when dismissing the civil recovery for a criminal act claim. There is no plausible basis for concluding that the court really intended to direct a verdict on that claim. The first assignment of error is sustained.

{¶20} Although the civil recovery for a criminal act claim is the only claim subject to appeal and our order reversing the dismissal of that count moots the remaining issues associated with that count, the district raises an issue on appeal that could recur if it seeks to retry Protiva: the court erred by refusing to allow the district to introduce Palazzo's deposition testimony because it believed that his repeated invocation of his Fifth

Amendment right against self-incrimination would prejudice Protiva. We therefore exercise our discretion to address it. *State v. Tucci*, 7th Dist. Mahoning No. 01 CA 234, 2002-Ohio-6903, ¶ 18; *In re R.A.I.*, 2d Dist. Miami Nos. 2006 CA 43 and 2006 CA 44, 2007-Ohio-2365, ¶ 11.

{¶21} The district's complaint named Palazzo as a defendant, along with 25 other individual defendants (including Protiva) and ten John Doe defendants. Palazzo was under federal indictment at the time he was deposed in this case. He answered substantive questions at deposition about Protiva's involvement by invoking his Fifth Amendment right to remain silent and not incriminate himself.[2] By the time Protiva's

---

[2]Those questions were:

"Q. Is it true that Laptops and More issued payment to Michelle Protiva, P-R-O-T-I-V-A, in the amount of $73,600 when she was supposed to be working for The School District as an unpaid volunteer within your IT department?"

"Q. Is it true the money paid to * * * Protiva * * * from Laptops and More was actually money that was wrongfully obtained from The School District as a result of your fraudulent transactions and fraudulent schemes?"

"Q. Is it true that Miss Protiva knew about the fraudulent scheme when she was receiving these payments?"

"Q. Is it true that Miss Protiva participated in the fraudulent scheme that you were perpetrating on The School District."

"Q. Did Miss Protiva * * * knowingly and intentionally make false representations and conceal information from The School District concerning their employment status with The School District and with certain vendors, including Laptops and More?"
"Q. Did Miss Protiva * * * falsely represent to The School District that [she] was serving as [a] volunteer in your Technology Services Department when [she was] instead receiving significant compensation from The School District through one of the shell corporations that you had set up."

trial commenced, Palazzo was unavailable to testify because he had pleaded guilty to the federal indictment and was serving a prison term.[3] The district sought to introduce his deposition testimony so that the jury could hear him invoke his right against self-incrimination. Protiva argued that the deposition should not be read to the jury because Palazzo's assertion of the right might create a negative inference against her. The court told the district that "whenever a person invokes their Fifth Amendment rights in my courtroom, I do not permit any of the questions. They take the stand, and they revoke [sic] their Fifth Amendment rights, and that's it." The court said that it would allow the district to indicate that Palazzo was deposed and invoked his Fifth Amendment right against self-incrimination. The court further told the district that it would permit the district to inform the jury during closing argument that "we would have liked to have asked him this, but he didn't respond to the questions[.]"

**{¶22}** The Fifth Amendment to the United States Constitution provides that "no person * * * shall be compelled in any criminal case to be a witness against himself." Although the privilege against self-incrimination would on its face appear to apply only to criminal proceedings, the courts have also applied the privilege to civil proceedings. *See, e.g., McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 69 L.Ed. 158 (1924) (upholding the use of the privilege in a bankruptcy proceeding).

---

[3]Palazzo pleaded guilty in federal court to conspiracy to commit mail fraud, money laundering conspiracy and wire fraud. *See United States v. Palazzo*, N.D.Ohio No. 1:13-CR-167, 2013 U.S. Dist. LEXIS 84762 (June 14, 2013).

{¶23} The courts have not, however, applied the Fifth Amendment as rigidly in civil cases as they do in criminal cases. Comments regarding a criminal defendant's invocation of the right against self-incrimination are prohibited, *Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), but there is no constitutional impediment to drawing an inference against a party invoking the Fifth Amendment privilege in a civil case. *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) ("The Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them * * *.") "'While the umbrella of Fifth Amendment guarantees is broad, the prohibition against compulsory testimony does not relieve a party from appearing or answering questions in a civil action.'" *State ex rel. Verhovec v. Mascio*, 81 Ohio St.3d 334, 337, 691 N.E.2d 282 (1998), quoting *Tedeschi v. Grover*, 39 Ohio App.3d 109, 111, 529 N.E.2d 480 (10th Dist.1988).

{¶24} The Fifth Amendment right against self-incrimination might be a shield in criminal cases, but in civil cases it can be a sword turned against the person claiming the privilege. This is because the rule in civil cases is that an adverse inference may be drawn against a party who invokes the Fifth Amendment privilege against self-incrimination. *Verhovec*; *Tedeschi*, *supra.* The inference exists because a witness's assertion that the answer to a question might be self-incriminating proves that the witness engaged in some incriminating activity relative to the question.

**{¶25}** The issue in this case is whether an adverse inference may be drawn against a party when a nonparty asserts the Fifth Amendment privilege against self-incrimination.[4]   Although this is a novel issue in this state, it is widely accepted in other jurisdictions that the evidentiary use of nonparty witnesses' invocations of the privilege against self-incrimination is allowed.   *See, e.g.*, *Fed. Deposit Ins. Corp. v. Fid. & Deposit Co. of Md.*, 45 F.3d 969, 978 (5th Cir.1995); *In re Urethane Antitrust Litigation*, D.Kan. MDL No. 1616, 2013 U.S. Dist. LEXIS 3166 (Jan. 8, 2013); *Levine v. March*, 266 S.W.3d 426 (Tenn.App.2007); *Lentz v. Metro. Prop. & Cas. Ins. Co.*, 437 Mass. 23, 768 N.E.2d 538 (2002); *Nelson v. State*, 273 P.3d 608 (Alaska 2012); *R.I. Res. Recovery Corp. v. Van Liew Trust Co.*, 2012 R.I. Super. LEXIS 167 (R.I. Super. Ct. 2012).

**{¶26}** These decisions collectively recognize that the use of nonparty invocations of the privilege against a party do not harm any of the policies underlying the privilege. The privilege is a personal right that protects only the party subpoenaed to give testimonial evidence.   *United States v. Nobles*, 422 U.S. 225, 233, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *Couch v. United States*, 409 U.S. 322, 327, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).   In this case, Palazzo's invocation of the privilege during his testimony in this civil case protected his right to refuse to testify against himself — by invoking the

---

[4]As a named defendant, Palazzo was a "party" in this case.   However, by the time trial commenced against Protiva, Palazzo was no longer a party: the district obtained summary judgment against Palazzo in March 2015, and the case against Protiva proceeded to trial in September 2015.

privilege to remain silent, prosecutors gained no ability to interrogate him further, nor could they use Palazzo's silence as a means of obtaining a criminal conviction.

{¶27} This is not a case where the mere assertion of the privilege imposed an "unconstitutional cost on the exercise of the privilege." *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir.1995). That rule does not apply "if the failure to testify *alone* were taken as an admission of guilt, without regard to other evidence[.]" (Emphasis sic.) *Id.*, citing *Baxter*, 425 U.S. at 318, 96 S.Ct. 1551, 47 L.Ed.2d 810. In other words:

> *Baxter* did no more than permit an inference to be drawn in a civil case from a party's refusal to testify. Respondent's silence in *Baxter* was only one of a number of factors to be considered by the finder of fact in assessing a penalty, and was given no more probative value than the facts of the case warranted; here, refusal to waive the Fifth Amendment privilege leads automatically and without more to imposition of sanctions.

*Lefkowitz v. Cunningham*, 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977), fn. 5.

{¶28} Whether Palazzo's refusal to answer questions should create an adverse inference for Protiva depends on the circumstances. The leading case on the issue is *LiButti v. United States*, 107 F.3d 110 (2d Cir.1997), where the United States Court of Appeals for the Second Circuit held that a nonparty's invocation of the Fifth Amendment privilege against self-incrimination and the adverse inference to be made from the invocation of that right was admissible. The court of appeals set forth a list of non-exclusive factors that the courts should consider when deciding whether to admit evidence of the invocation of the right: (1) the nature of the relevant relationships; (2) the

degree of control of the party over the nonparty witness; (3) the compatibility of the interests of the party and nonparty witness in the outcome of the litigation; and (4) the role of the nonparty witness in the litigation. *Id.* at 123-124.

{¶29} These factors should guide the court's consideration of whether to admit evidence of a nonparty's invocation of the privilege against self-incrimination. In addition, the court must consider the Rules of Evidence regarding relevancy (Evid.R. 401) and whether the probative value of the evidence is substantially outweighed by its prejudicial effect (Evid.R. 403). These considerations are within the court's discretion to make, but we note that invocations of the privilege given during sworn deposition testimony should be considered inherently reliable given the adverse inference that accompanies the invocation of the right — much like an admission against interest, the refusal to answer a question by asserting the privilege against self-incrimination is necessarily an acknowledgment of wrongdoing. *Baxter*, 425 U.S. at 318, 96 S.Ct. 1551, 47 L.Ed. 810 (1976) ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them[.]").

{¶30} This segues into the final issue we consider: whether invocations of the privilege during depositions are admissible. The district sought to use Palazzo's deposition testimony in lieu of his live testimony at trial. That use was permitted by Civ.R. 32(A)(3)(c), which allows a deposition to be used as evidence against "any party who was present or represented at the taking of the deposition or who had reasonable

notice thereof" if the court finds that the witness is unable to testify because of "imprisonment."

**{¶31}** Protiva argues that Palazzo's deposition testimony was hearsay, and while it might ordinarily be admitted under the Evid.R. 804(B)(1) hearsay exception for sworn deposition testimony by an unavailable witness, the district did not show that Palazzo was unavailable consistent with Evid.R. 804(A)(5) because it did not attempt to procure his attendance at trial by "process or other reasonable means" — the record indicates that the district sought to compel Palazzo's attendance at trial by way of subpoena.

**{¶32}** Protiva's argument on Palazzo's unavailability ignores that Civ.R. 32(A) states:

> At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof[.]

**{¶33}** The parties were present at the taking of Palazzo's deposition, so the deposition was admissible under the rule as though Palazzo had been present and testifying at trial. *Easley v. Dept. of Rehab. & Corr.*, Ct. of Cl. No. 2010-01221, 2011-Ohio-2623, ¶ 7, fn. 1. The content of his testimony was subject to the proviso that it be otherwise admissible under the rules of evidence; for example, if Palazzo's deposition testimony contained hearsay, that part of his testimony would be inadmissible unless subject to a hearsay exception. Protiva makes no argument that those portions of Palazzo's deposition that the district sought to introduce into evidence were inadmissible

under the rules of evidence. On the limited record before us, we see no bar to the admissibility of Palazzo's deposition testimony, recognizing that the trial judge has the discretion to admit evidence. *See* Evid.R. 104(A).

**{¶34}** The remaining assignments of error are moot. *See* App.R. 12(A)(1)(c).

**{¶35}** Judgment reversed and remanded.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MELODY J. STEWART, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR