[Cite as *Estate of DeChellis v. DeChellis*, 2019-Ohio-3078.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ESTATE OF PHILIP JOHN DECHELLIS BY ANN HEFFNER, EXECUTRIX | : : : : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2018CA00153 |
| | : | |
| PATTY DECHELLIS, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                            Common Pleas, Probate Division, Case
                            No. 228240

JUDGMENT:                   AFFIRMED

DATE OF JUDGMENT ENTRY:     July 29, 2019

APPEARANCES:

For Plaintiff-Appellee:                For Defendants-Appellants:

MARIO GAITANOS                         CRAIG T. CONLEY
437 Market Ave. N.                     604 Huntington Plaza
Canton, OH 44702                       220 Market Ave. S.
                                       Canton, OH 44702

*Delaney, J.*

{¶1}   Defendants-Appellants Patty DeChellis and Danny DeChellis appeal the October 10, 2018 judgment entry of the Stark County Court of Common Pleas, Probate Division.

**FACTS AND PROCEDURAL HISTORY**

**The DeChellis Family**

{¶2}   Philip DeChellis was the patriarch of a large, blended family living in Canton, Ohio. Philip had three children with his first wife: Ann Heffner, Marco DeChellis, and Michael DeChellis. Philip began a 30-year romantic relationship with Defendant-Appellant Patty DeChellis, resulting in the birth of Defendant-Appellant Daniel Patrick Skiba nka Daniel Patrick DeChellis. Philip and Patty divorced their spouses and moved with the children to Ohio in 1986. Philip and Patty never married but cohabited as domestic partners until Philip's death on July 21, 2016.

{¶3}   Philip and Patty resided in a home on Lancaster Gate Street, Canton, Ohio. Also residing in the home was Philip's mother, Daniel, Daniel's wife, and Daniel's child. Ann, Marco, and Michael did not have a key to the Lancaster Gate home. Ann and Michael frequently visited their father at the Lancaster Gate home.

**The DeChellis Family Business**

{¶4}   When Philip moved to Ohio in 1986, he took over a pizza shop. The business was originally located on Cleveland Avenue in Canton, Ohio; later, the business relocated to Market Avenue and was named "Napoli's Italian Eatery." Napoli's Italian Eatery is a well-known dining establishment in downtown Canton and is regularly frequented by downtown employees.

{¶5}  The DeChellis family have all worked at Napoli's Italian Eatery at some point. Philip managed the business and handled its finances. Patty and Michael supervised the operations of the restaurant.

{¶6}  It was well known in the DeChellis family and to Philip's friends that Philip preferred to handle his business and personal finances with cash, not credit. Philip had a distrust of banks. Philip's accountant, Stephen Miller, C.P.A., confirmed that Philip paid his employees with cash and his personal and business expenses with cash whenever possible. Family members observed Philip take cash home from the business in a briefcase on a daily basis. Ann and Michael saw stacks of cash in the Lancaster Gate home. Michael saw his father's safe in his basement office at the Lancaster Gate home. Peter Kazakis, Philip's long-term friend, observed Philip retrieve at least $5,000 in cash from Philip's basement office and bedroom. Philip did not purchase birthday or Christmas gifts for his family; instead, he would give them cash.

{¶7}  Due to Philip's exclusive use of cash, his net worth was somewhat of a mystery, even to his accountant. For example, Philip purchased a $279,000 home with $60,512.57 as a down payment. He reported to the bank that he had liquid assets of $86,295.00 but paid off the $232,000 30-year mortgage in four years. Philip drove a Cadillac and owned two vintage Corvettes. Philip paid Patty an allowance that amounted to $26,000 per year. Daniel asked for $26,000 for day-trading and Philip gave him a cashier's check for the money. Philip did not have any business debt. His accountant relied on the information provided from Philip to prepare his tax returns but did not verify the financial integrity of Philip's data. His accountant knew it was not uncommon for cash businesses to under report income.

**The Last Will and Testament**

{¶8}   In 2013, Philip suffered a serious heart attack. In 2015, Philip suffered a stroke and heart attack, resulting in surgery. In 2016, Philip was diagnosed with lung cancer.

{¶9}   Philip worked with Attorney Stanley Rubin for business related legal issues. He also retained Attorney Rubin's services for his estate planning. In 2015, Philip told Attorney Rubin multiple times he had $750,000 in cash that upon his death, he wanted to be divided equally between his four children. In April or May 2016, Attorney Rubin attended a family meeting with Philip, Ann, Patty, and Daniel. At the meeting, Philip told those present he had $750,000 in cash that he wanted to divide equally between the four children. Philip did not say at the family meeting where the $750,000 in cash was located or show anyone the $750,000 in cash. In accordance with Philip's wishes, Attorney Rubin prepared a Last Will and Testament with a residuary clause that provided for the equal division of residuary assets among the four children. The Will was signed by Philip on July 19, 2016 and admitted to Probate on August 1, 2016. Philip named Ann as the Executrix.

{¶10} Philip passed away on July 21, 2016. After his death, Ann spoke with Patty regarding the $750,000 in cash to be split among the children. Ann wanted to meet to divide the cash, but Patty delayed the meeting. On September 2, 2016, Ann and her fiancée came to Lancaster Gate home with an appraiser for purposes of executing the Will. During the appraisal of the personal property in the home, Ann observed two of her father's briefcases in his bedroom that appeared to be broken into and empty. She also observed a safe in the bedroom that appeared to be broken into and empty. Ann and the

appraiser were not permitted to enter Daniel's room. In her father's basement office, Ann observed the room in disarray and the basement safe was missing. Ann called Attorney Rubin after the September 2, 2016 appraisal because she was upset and felt that Patty and Danny had taken the $750,000 in contravention of her father's will.

**The Lawsuits**

{¶11} On April 25, 2017, Patty and Daniel filed a complaint in the Stark County Court of Common Pleas, General Division, Case No. 2017CV00858, against Ann, Michael, Marco, and the Estate of Philip J. DeChellis alleging intentional tortious interference with inheritance, failure to pay bills, and intentional interference of emotional distress. The defendants answered and filed a counterclaim against Patty and Daniel, alleging concealment of assets, conversion, and intentional infliction of emotional distress in regard to the $750,000 in cash. In their answer to the counterclaim, Patty and Daniel stated, "Plaintiffs/Counterclaim Defendants invoke their Fifth Amendment right to remain silent in response to allegations in paragraphs 6, 7, 8, 10 and 11 of Defendants' counterclaim for quasi-criminal claims for Concealment of Assets and Conversion." (Answer, July 19, 2017).

{¶12} Case No. 2017CV00858 was voluntarily dismissed by joint stipulation on January 15, 2018.

{¶13} On February 28, 2017, Plaintiff-Appellee Ann Heffner, duly appointed Executrix of Philip J. DeChellis, filed a R.C. 2109.50 concealment of assets action in the Stark County Court of Common Pleas, Probate Division against Respondents-Appellants Patty and Daniel. On April 26, 2017, Ann amended her complaint and requested recovery of $750,000.

{¶14} The matter proceeded to a bench trial on August 29-30, 2018. Ann presented seven witnesses on direct: Ann, Michael, Maria DeChellis, Peter Kazakis, Rodney Dimmerling, Stephen Miller, and Ann's fiancée. Ann presented the testimony of Patty and Daniel on cross examination. During cross, counsel questioned Patty and Daniel about the discovery depositions where they were asked about the location of the cash in the Lancaster Gate home and whether they were in possession of the $750,000 in cash. Both Patty and Daniel invoked their Fifth Amendment rights against self-incrimination. The videotaped depositions of Maria DeChellis, Stephen Miller, and Rodney Dimmerling were viewed by the trial court and incorporated into the trial record. At the conclusion of Ann's case, Patty and Daniel rested without the presentation of evidence.

{¶15} On September 25, 2018, the trial court reconvened the parties and announced its decision on the record. The trial court found Patty and Daniel guilty of having concealed, embezzled, conveyed away, or having been in possession of monies owned by Philip and now belonging to his Estate.

{¶16} On October 10, 2018, the trial court journalized its verdict in its findings of fact and conclusions of law. The trial court rendered judgment in favor of Ann as Executrix, in the amount of $750,000 against Patty and Daniel jointly and severally, with a ten-percent penalty from the date of Philip's death.

{¶17} It is from this judgment Patty and Daniel now appeal.

**ASSIGNMENTS OF ERROR**

{¶18} DeChellis raises four Assignments of Error:

{¶19} "I. THE TRIAL COURT ERRED IN CONSIDERING AND RELYING UPON INDIRECT EVIDENCE.

{¶20} "II. THE TRIAL COURT ERRED BY ADMITTING, OVER OBJECTION, HEARSAY TESTIMONY.

{¶21} "III. THE TRIAL COURT ERRED BY INCORPORATING, OVER OBJECTION, PLEADINGS AND PRETRIAL DISCOVERY MATERIALS INTO THE TRIAL RECORD.

{¶22} "IV. THE TRIAL COURT'S GUILTY FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL."

**ANALYSIS**

**I.**

**R.C. 2109.50**

{¶23} A concealment action is brought under R.C. 2109.50 and permits a complaint to be made to the probate court "against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys * * * of the estate." R.C. 2109.50. The purpose of R.C. 2109.50 is to provide a speedy and effective method of discovering assets belonging to the estate and securing their recovery. *In re the Estate of Gordon*, 5th Dist. Richland No. 13-CA-77, 2014-Ohio-2087, ¶ 21 citing *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 629 N.E.2d 500 (9th Dist.1993). It is a quasi-criminal statute requiring a finding of guilty or not guilty. *Id.* citing *Ukrainiec v. Batz*, 24 Ohio App.3d 200, 202, 493 N.E.2d 1368 (9th Dist.1982).

{¶24} While R.C. 2109.50 is a quasi-criminal special statutory proceeding, this type of action is controlled by the laws governing civil proceedings in the probate court. *Lance v. Boldman*, 2018-Ohio-44, 93 N.E.3d 1013 (9th Dist.), ¶ 33 citing *Wozniak* at 411, 629 N.E.2d 500. Thus, the complainant must prove the elements of a R.C. 2109.50 claim by a preponderance of the evidence. *Id.* at ¶ 33 citing *Kasick v. Kobelak*, 184 Ohio App.3d 433, 2009-Ohio-5239, 921 N.E.2d 297 (8th Dist.), ¶ 13.

{¶25} Because of the quasi-criminal nature, "[w]rongful or culpable conduct on the part of the person accused is an element of the offense, which must be proven by a preponderance of the evidence." *Id.* at ¶ 34 citing *Kaforey v. Burge*, 9th Dist. Summit No. 17050, 1995 WL 283774, at *2 (May 10, 1995), citing *Ukrainiec* at 202, 493 N.E.2d 1368. Thus, the complainant must prove more than "mere possession" of the estate assets. *Id.* citing *Longworth v. Childers*, 180 Ohio App.3d 162, 2008-Ohio-4927, ¶ 21, 904 N.E.2d 904 (2nd Dist.); *Ukrainiec*, 24 Ohio App.3d at 202, 493 N.E.2d 1368. "[T]he inquiry under R.C. 2109.50 focuses on the ownership of the asset and whether possession of the asset is being impermissibly concealed or withheld from the estate." *Id.* citing *Wozniak* at 407, 629 N.E.2d 500.

### Burden of Proof

{¶26} In their first Assignment of Error, Patty and Daniel contend the trial court used the incorrect evidentiary standard in the R.C. 2109.50 action. They contend the trial court relied upon indirect evidence to reach its verdict, when the correct burden of proof to establish a prima facie case of concealment of assets is by direct evidence as held in *Silcott v. Prebble*, 12th Dist. No. CA2002-04-028, 2003-Ohio-508.

{¶27} In *Silcott v. Prebble*, 12th Dist. No. CA2002-04-028, 2003-Ohio-508, the decedent's daughter brought claims against her siblings, including two brothers who had served as the decedent's attorney-in-fact, seeking an accounting of probate assets and alleging concealment of assets and intentional interference with expectancy interests. The trial court entered judgment requiring the attorneys-in-fact to reimburse the estate. The Twelfth District Court of Appeals affirmed. In its opinion, the court stated:

> In her fifth assignment of error, Lana argues that the probate court erred by awarding judgment only against Roger and Robert, the attorneys-in-fact. Lana argues that judgment should also have been entered against the other six appellees for receiving funds improperly from the attorneys-in-fact. We disagree. Unlike Roger and Robert, the other six appellees were not attorneys-in-fact in charge of Lowell's assets. In addition, although claiming in her complaint that all of appellees had concealed, embezzled, or conveyed away $126,800, Lana failed to produce any evidence to trace any assets to those six appellees. It is well-established that in a proceeding for concealment of assets, the burden of proof is upon the complainant to establish a prima facie case by direct evidence. Maag, Troy, and Barlow, 2002 Ohio Probate Practice and Procedure, 144, Section 12.08; see, also, *In re Estate of Woods* (1959), 110 Ohio App. 277, 167 N.E.2d 122. Lana has failed to meet her burden. Lana's fifth assignment of error is accordingly overruled.

*Id.* at ¶ 34.

{¶28} In support of their argument, Patty and Daniel refer this Court to *Kogut v. Marcelli*, 5th Dist. 2011CA00026, 2012-Ohio-183, where the appellant argued that in contravention of *Silcott, supra*, the trial court failed to hold the appellee/complainant to his burden of proof. *Id.* at ¶ 14. Patty and Daniel argue this Court's reference to *Silcott* in *Kogut* therefore establishes the required standard of proof in a concealment of assets action is direct evidence. We find Appellants misinterpret our reliance on *Silcott*.

{¶29} In *Kogut*, the appellant's complaint for concealment alleged, "Rose Kogut has concealed or conveyed away monies and jewelry to the estate of the decedent in fraud of its rights." *Id.* at ¶ 30. At issue in the case were bank accounts that the appellant alleged to be joint and survivor accounts with the decedent. The trial court found the appellee established a prima facie case for the concealment of assets and appellant did not meet her burden in establishing joint and survivorship accounts between her and the decedent. *Id.* at ¶ 3. We affirmed. We cited to the above holding in *Silcott* and first found the trial court properly acknowledged the appellee's burden in the case, causing the concealment matter to be put on first. *Id.* at ¶ 25, 30. The appellant argued that her testimony alone was sufficient to establish joint and survivorship accounts, and no other extrinsic evidence should have been permitted under *Wright v. Bloom*, 69 Ohio St.3d 596, 635 N.E.2d 31 (1994). Under *Wright*, the opening of an account in joint and survivorship form shall, in the absence of fraud, duress, undue influence or lack of mental capacity on the part of the depositor, be conclusive evidence of the depositor's intention to transfer the survivor the balance remaining in the account at the depositor's death. We held pursuant to *Wright*, extrinsic evidence was available as to whether there was fraud in the opening of joint and survivorship accounts. *Id.* at ¶ 30. Based on the evidence presented

and our deference to the trial court as to matters of credibility and weight of the evidence, we found the trial court correctly determined the accounts were not joint and survivorship accounts. *Id.* at ¶ 38. In *Kogut*, our reliance upon *Silcott* was only to find the trial court correctly determined the burden to establish a concealment action rested on the appellee. *Id* at ¶ 30.

{¶30} Under R.C. 2109.50, it is well-established the wrongful conduct on the part of the person accused must be proved by a preponderance of the evidence. In *Silcott*, the court cites to *In re Estate of Woods*, 110 Ohio App. 277, 167 N.E.2d 122 (10th Dist.1959) in support of its statement that the burden of proof is upon the complainant to establish a prima facie case by direct evidence. *In re Estate of Woods* states as follows:

> In a proceeding for concealment of assets, the burden is upon the complainant to prove by a preponderance of the evidence that the respondent received the money or other thing of value claimed to have come into his hands and that he concealed, empbezzled [sic] or conveyed it away. *Leonard v. State ex rel. Scott*, 3 Ohio App. 313.
>
> Since the proceeding requires a finding of guilty and is quasi criminal in character, the burden must be imposed upon the complainant (or the court, cf. *In re Fife's Estate*, 164 Ohio St. 449, 132 N.E.2d 185) to at least produce evidence of such probative character that reasonable minds might reach different conclusions upon the guilt or innocence of the respondent. * * *
>
> In such special proceeding wherein the evidence discloses that the respondent at some time prior to the death of the decedent had a transitory possession of the proceeds of checks belonging to the decedent, the

burden is also upon the complainant to trace the funds into the estate of the respondent and no burden is cast upon the respondent to trace the money elsewhere between the time of its delivery to the decedent and her subsequent death. Cf. *In re Leiby's Estate*, 157 Ohio St. 374, 105 N.E.2d 583

*In re Woods' Estate*, 110 Ohio App. 277, 282, 167 N.E.2d 122, 125-126 (10th Dist.1959). The complainant must prove more than "mere possession" of the estate assets. *Lance v. Boldman*, 9th Dist. No. 16AP0032, 2018-Ohio-44, 93 N.E.3d 1013, 2018 WL 327799, ¶ 34. " '[T]he inquiry under R.C. 2109.50 focuses on the ownership of the asset and whether possession of the asset is being impermissibly concealed or withheld from the estate.' " *Gustafson v. Miller*, 5th Dist. Perry No. 15–CA–00008, 2015–Ohio–5515, ¶ 23 quoting *Wozniak* at 407, 629 N.E.2d 500.

{¶31} Upon review of the trial court's verdict and October 10, 2018 judgment entry, we find the trial court utilized the correct burden of proof in determining whether Ann established that Patty and Daniel concealed, embezzled, or conveyed away or was in possession of $750,000 belonging to the Estate of Philip J. DeChellis. As will be discussed further in our analysis of the fourth Assignment of Error, the trial court found Ann demonstrated by a preponderance of the evidence that Patty and Daniel impermissibly concealed or withheld the $750,000 from the Estate. (October 10, 2018 Judgment Entry).

{¶32} The first Assignment of Error is overruled.

**II.**

{¶33} In its second Assignment of Error, Patty and Daniel argue the trial court erred in admitting, over objection, hearsay testimony.

{¶34} "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Huth v. Kus*, 5th Dist. No. 2017 AP 06 0015, 2018-Ohio-1931, 113 N.E.3d 140, 2018 WL 2230727, ¶ 30 quoting *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). "Ordinarily, we review a trial court's hearsay rulings for an abuse of discretion." *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). However, "[w]hether evidence is admissible because it falls within an exception to the hearsay rule is a question of law, thus, our review is de novo." *State v. Truitt*, 9th Dist. No. 25527, 2011-Ohio-6599, 2011 WL 6749811, ¶ 24 (quoting *Monroe v. Steen*, 9th Dist. No. 24342, 2009-Ohio-5163, 2009 WL 3119693, ¶ 11.

{¶35} "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the recognized exceptions. Evid.R. 802; *State v. Steffen*, 31 Ohio St.3d 111, 119, 509 N.E.2d 383 (1987).

{¶36} Appellants' argument on their second Assignment of Error states in total:

All of the aforesaid hearsay testimony elicited at trial by Appellee over Appellants' repeated objections was clearly inadmissible under Evid R 802; and, that hearsay testimony (deemed as dispositive by the Trial Court below) was not otherwise admissible under Evid R 805 (B) (5) as an

exception to the hearsay rule, noting that Appellants' testimony at trial (as well as before trial) did <u>not</u> "open the door" to that hearsay exception. (See, *e.g., Mancz v. McHenry* (2nd Dist.), 2012-Ohio-3285, at ¶ 27 and 28.)

Accordingly, this Assignment of Error should be sustained and this Appeal should be granted.

{¶37} Appellants do not cite to the record to show where the trial court's alleged evidentiary errors may be located. We reviewed the direct examination of Ann Heffner and find that counsel objected at least 15 times to her testimony on the basis of hearsay. Ann presented eight other witnesses in her case in chief and Appellants' counsel objected during their testimony on the basis of hearsay. App.R. 16(A)(7) requires an appellant's brief to contain "the contentions of the appellant with respect to each assignment of error * * * and the reasons in support of the contentions, with citations to * * * parts of the record on which appellant relies." Thus, an appellant must indicate to the appellate court specifically where the trial court's alleged errors may be located. "It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error." *Silcott v. Prebble*, *supra*, ¶ 19 citing *State v. Watson*, 126 Ohio App.3d 316, 321, 710 N.E.2d 340 (12th Dist.1998).

{¶38} We assume because Patty and Daniel reference Evid.R. 804(B)(5) in their appellate argument, they contend the trial court impermissibly allowed statements made by Philip, the decedent. Evid.R. 804(B) provides in relevant part:

(B) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

* * *

(5) Statement by a Deceased or Incompetent Person. The statement was made by a decedent or a mentally incompetent person, where all of the following apply:

(a) the estate or personal representative of the decedent's estate or the guardian or trustee of the incompetent person is a party;

(b) the statement was made before the death or the development of the incompetency;

(c) the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent or incompetent person.

{¶39} The purpose of Evid.R. 804(B)(5) is to benefit a decedent's representative by allowing the decedent to " 'speak from the grave' " and rebut testimony by an adverse party. *Murray v. Carano*, 5th Dist. Ashland No. 17-COA-005, 2017-Ohio-8235, 2017 WL 4711862, ¶ 23, quoting *Bobko v. Sagen*, 61 Ohio App.3d 397, 409, 572 N.E.2d 823 (8th Dist.1989), quoting *Bilikam v. Bilikam*, 2 Ohio App.3d 300, 305, 441 N.E.2d 845 (10th Dist.1982). This hearsay exception, however, "is not intended to apply to the party opposing the decedent[, but] [r]ather, it applies to the party substituted for the decedent." *Bilikam* at 305, 441 N.E.2d 845.

{¶40} Patty and Daniel were before the probate court pursuant to a R.C. 2109.50 proceeding as respondents who were accused of concealing the Estate's assets. Thus, Patty and Daniel were adverse parties opposing the Estate and not parties representing the Estate. Ann, as Executrix, was the Estate representative.[1] We therefore find no error

---

[1] On March 13, 2019, the probate court issued a judgment entry removing Ann Heffner as fiduciary and appointed Attorney David Dingwell as Administrator W.W.A. for the purpose of completing the administration of the estate.

for the trial court to overrule Appellants' objections to the decedent's statements under Evid.R. 804(B)(5). In contravention of App.R. 16(A)(7), Appellants have not provided this Court with references to the record to support a reversal of the trial court.

{¶41} Appellants' second Assignment of Error is overruled.

**III.**

{¶42} Patty and Daniel argue in their third Assignment of Error that the trial court erred in allowing pleadings and pretrial discovery materials to be part of the trial record. The parties took discovery depositions of Ann, Michael, Patty, and Daniel, which were filed with the trial court prior to the trial. At trial, during Ann's case in chief, counsel cross-examined Patty and Daniel utilizing their discovery depositions. (Vol. I, 180-183; 194-196). Patty and Daniel did not object at trial to the use of the discovery depositions. During cross-examination of Ann and Michael, counsel for Patty and Daniel utilized Ann and Michael's respective discovery depositions. (Vol. I, 98; 225-229).

{¶43} A party waives and may not raise on appeal any error which arises during the trial court proceedings if that party fails to bring the error to the court's attention, by objection or otherwise, at a time when the trial court could avoid or correct the error. *Lowder v. Domingo*, 5th Dist. Stark No. 2016CA00043, 2017-Ohio-1241, 2017 WL 1231724, ¶ 21 citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121–123, 679 N.E.2d 1099 (1997). A failure to object at trial waives all but plain error. *Id*. The plain error doctrine is applicable in civil cases only where the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process." *Id*. at syllabus.

{¶44} A proceeding for the discovery of concealed or embezzled assets of an estate is a special proceeding of a summary, inquisitorial character whose purpose is to facilitate the administration of estates by summarily retrieving assets that rightfully belong

there. *State v. Harmon*, 5th Dist. No. 2016AP080042, 2017-Ohio-320, 72 N.E.3d 704, 2017 WL 390204, ¶ 14, citing *In re Estate of Fife*, 164 Ohio St. 449, 132 N.E.2d 185 (1956), paragraphs one and two of the syllabus; *Accord, Goldberg v. Maloney*, 111 Ohio St.3d 211, 2006-Ohio-5485, 855 N.E.2d 856, ¶ 23. Because it is a discovery proceeding, the action does not proceed in the same fashion as an ordinary civil action between two or more parties where there is a complaint and an answer. *Lance v. Boldman*, 2018-Ohio-44, 93 N.E.3d 1013 (9th Dist.2018), ¶ 24 citing *In re Estate of Fife*, 164 Ohio St. 449, 454. However, the Rules of Civil Procedure are applicable to a proceeding under R.C. 2109.50. *In re Estate of Popp*, 94 Ohio App.3d 640, 649, 641 N.E.2d 739, 744, (8th Dist.1994), dismissed, 70 Ohio St.3d 1446, 639 N.E.2d 114 (1994); *State v. Harmon*, 2017-Ohio-320, 72 N.E.3d 704 (5th Dist.).

{¶45} A concealment action notifies the probate court of alleged misconduct, upon which the court must investigate the charge and make a finding of guilt or innocence based on the evidence presented. *Lance v. Boldman*, 2018-Ohio-44, 93 N.E.3d 1013 (9th Dist.2018), ¶ 24 citing *In re Estate of Fife*, 164 Ohio St. 449, 454. The court conducts the required investigation by examining, under oath, the respondent and any witnesses. *Id.* at ¶ 25; R.C. 2109.50. Because it is the court that calls the respondent to appear before it, it is the court that controls the examination of the respondent. *Id.* However, the court may delegate the examination of the respondent to the attorneys. *Id.* The respondent "is therefore in reality the witness of the court, and the character and extent of [the respondent's] examination rest largely in the court's discretion." *Id.*

{¶46} In this concealment action, we find no plain error for the trial court to permit the use of the parties' discovery depositions during cross-examination. We note counsel

for Patty and Daniel also used discovery depositions during his cross-examination of Ann and Michael, the same act they are now alleging was error. Under the doctrine of "invited error," it is well settled that "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State v. Helfrich*, 5th Dist. Licking No. 18-CA-45, 2019-Ohio-1785, 2019 WL 2051027, ¶ 86 *State ex rel. Smith v. O'Connor*, 71 Ohio St.3d 660, 663, 646 N.E.2d 1115(1995), citing *State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 359, 626 N.E.2d 950(1994).

{¶47} Appellants' third Assignment of Error is overruled.

## IV.

{¶48} Appellants contend in their fourth Assignment of Error that the trial court's judgment was against the manifest weight and sufficiency of the evidence. We disagree.

{¶49} In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. The Ohio Supreme Court held the standard of review for manifest weight of the evidence for criminal cases stated in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997) is also applicable in civil cases. *Eastley*, 132 Ohio St.3d. A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id*; *see also Sheet Metal Workers Local Union No. 33 v. Sutton,* 5th Dist. Stark No. 2011 CA 00262, 2012–Ohio–3549. "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence,

rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley*, *supra*, 2012–Ohio–2179, 132 Ohio St.3d 328, 972 N.E.2d 517.

{¶50} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. *Markel v. Wright*, 5th Dist. Coshocton No. 2013CA0004, 2013–Ohio–5274. Further, "an appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusion of law." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The underlying rationale for giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Id.* Accordingly, a trial court may believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill*, 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist.1998).

{¶51} Patty and Daniel argue Ann proffered no direct evidence that the $750,000 actually existed. In the alternative, if the $750,000 did exist, there is no direct evidence that Patty or Daniel received the money and concealed, embezzled, or conveyed away money that belonged to the Estate.

{¶52} In its judgment entry, the trial court summarized its findings of fact:

1. Phil was a successful businessman who accumulated large sums of cash which he kept at his home.

2. Witnesses saw large sums of cash in Phil's home which he used for business and personal purposes.

3. Phil's expenditures for his lifestyle far exceeded his reported income.

4. [Patty and Daniel] resided in Phil's home prior to his death and are now the sole occupants of his house.

* * *

6. Phil's declining health prompted him to consult with his attorney, Stanley Rubin, Esq., regarding his financial affairs and a new Will.

7. Phil told Attorney Rubin many times, including shortly before his death, that he had $750,000 cash in his home.

8. Defendants exercised their Fifth Amendment right regarding finding money in Phil's home after his death, but later stated that any cash in the home belonged to them.

(October 10, 2018 Judgment Entry).

{¶53} This case turned on the credibility of the witnesses. The trial court had the opportunity to view and listen to Ann, Daniel, Michael, Patty, and Attorney Rubin. He observed their demeanors, gestures, and voice inflections while they were testifying and thus the trial court "may believe all, part or none of the testimony of any witness." *In re Estate of Gordon*, 5th Dist. Richland No. 13-CA-77, 2014-Ohio-2087, ¶ 23 citing *Lee v. Lee*, 5th Dist. Licking No. 2008 CA 112, 2009-Ohio-5250. The trial court stated in its judgment entry that it found the testimony of Attorney Rubin to be the most credible and reliable. Attorney Rubin testified that in 2015, Philip told him multiple times he wanted to split $750,000 in cash between his four children. In 2016, Attorney Rubin attended a family meeting where Philip told the family he had $750,000 and wanted to split it between the four children. Attorney Rubin then drafted a Will containing a residuary clause for the

division of the $750,000 in cash. Attorney Rubin had no interest in the cash or motivation to misstate the wishes of his client.

{¶54} The trial court did not find the testimony and actions of Patty and Daniel were believable. One of issues the trial court had with their credibility was their invocation of their Fifth Amendment right against self-incrimination when asked, "Isn't it true that you and Danny are in possession of the cash in an amount of $750,000 that belonged to Phil DeChellis and now should be part of the Estate of Philip DeChellis that's filed with Probate Court in Stark County?" (Vol. I, 182, 195). The Fifth Amendment to the United States Constitution provides that "no person * * * shall be compelled in any criminal case to be a witness against himself." Courts have applied the privilege against self-incrimination to civil proceedings. *Cuyahoga Hts. Local School Dist. v. Palazzo*, 8th Dist. No. 103592, 2016-Ohio-5137, 69 N.E.3d 162, 2016 WL 4037309, ¶ 22 citing *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 69 L.Ed. 158 (1924) (upholding the use of the privilege in a bankruptcy proceeding).

{¶55} Courts have not applied the Fifth Amendment as rigidly in civil cases as they do in criminal cases. *Id.* at ¶ 23. Comments regarding a criminal defendant's invocation of the right against self-incrimination are prohibited [*Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)], but there is no constitutional impediment to drawing an inference against a party invoking the Fifth Amendment privilege in a civil case. *Id.* citing *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) ("The Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them * * *.") " 'While the umbrella of Fifth Amendment guarantees is broad,

the prohibition against compulsory testimony does not relieve a party from appearing or answering questions in a civil action.' " *Id.* citing *State ex rel. Verhovec v. Mascio*, 81 Ohio St.3d 334, 337, 691 N.E.2d 282 (1998), quoting *Tedeschi v. Grover*, 39 Ohio App.3d 109, 111, 529 N.E.2d 480 (10th Dist.1988).

{¶56} The Eighth District Court of Appeals observed:

The Fifth Amendment right against self-incrimination might be a shield in criminal cases, but in civil cases it can be a sword turned against the person claiming the privilege. This is because the rule in civil cases is that an adverse inference may be drawn against a party who invokes the Fifth Amendment privilege against self-incrimination. *Verhovec; Tedeschi*, *supra*. The inference exists because a witness's assertion that the answer to a question might be self-incriminating proves that the witness engaged in some incriminating activity relative to the question.

*Cuyahoga Hts. Local School Dist. v. Palazzo*, 8th Dist. No. 103592, 2016-Ohio-5137, 69 N.E.3d 162, 2016 WL 4037309, ¶ 24.

{¶57} In this case, Patty and Daniel's use of their privilege against self-incrimination acted as a sword, not a shield, in determining whether they were in possession of and concealed, embezzled, or conveyed away the $750,000 from the Estate. This inference, in conjunction with the undisputed evidence that Philip exclusively used cash in his personal and business dealings, Philip had large amounts of cash at home, Philip kept cash in his bedroom and basement office, Patty and Daniel had access to the Lancaster Gate home after Philip's death, and Patty and Daniel never met with Ann to distribute the cash, supports the trial court's conclusion that Patty and Daniel

possessed the $750,000 and they concealed, embezzled, or conveyed away the funds from the Estate.

{¶58} We find the trial court's finding of guilt is supported by the weight and sufficiency of the evidence.

{¶59} Appellant's fourth Assignment of Error is overruled.

**CONCLUSION**

{¶60} The judgment of the Stark County Court of Common Pleas, Probate Division, is affirmed.

{¶61}

By: Delaney, J.,

Gwin, P.J. and

Baldwin, J., concur.